[No. 28741.   Department Two.   November 12, 1942.]
ALBERT HENSON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General, Edward S. Franklin,* and *Roy A. Huse, Assistants,* for appellant.

*Vanderveer, Bassett & Geisness,* for respondent.

SIMPSON, J.—March 3, 1941, Albert Henson filed a claim with the department of labor and industries for compensation for disability sustained by contraction of an occupational disease, known as silicosis, while in the employ of the Trade Dollar Lease Company of Republic, Washington.  The claim was made under

[1] Reported in 130 P. (2d) 885.

the provisions of Rem. Rev. Stat. (Sup.), § 7679-1 [P. C. § 3472-21], Laws of 1939, chapter 135, p. 382. He certified that the date of his first exposure was October, 1926, and the last was of January 1, 1940.

The supervisor of industrial insurance refused to consider the claim on its merits and rejected it for the reason that "no claim has been filed for or on behalf of said workman within one year after the day upon which the injury occurred." The claimant then appealed to the joint board of the department. That board, after a hearing, sustained the order of the supervisor.

Claimant's appeal to the superior court resulted in the entry of a judgment reversing the order of the supervisor and the joint board. The trial court reversed the order upon the ground that the one-year statute of limitations provided by Rem. Rev. Stat., § 7686 [P. C. § 3480] (d), applied only to traumatic injuries and not to occupational diseases. The department has appealed.

The evidence submitted to the joint board brought forth the following facts: Respondent is forty-six years of age. Prior to coming to the state of Washington in 1930, he had been employed in the copper mines of Montana and the lead and zinc mines of Idaho for approximately eight years. His first employment in Washington was in 1936 and involved silica exposure.

August 27, 1936, he was examined by a doctor for the veterans' bureau. That examination did not disclose evidence of silicosis. During the month of October, 1936, he obtained employment with the Eureka Mining & Milling Company of Republic, for which he worked for about eighteen months. Thereafter, he worked for the Mountain Lion Mining Company for six months, and was later employed by the Trade Dollar Lease Company for one year, ending his employment

with that company January 1, 1940. He then opened a beer parlor in Burke, Idaho, and conducted that business until the latter part of December, 1940, at which time he decided to return to mining at Wallace, Idaho.

He was examined for that employment by Dr. Mowry of Wallace, Idaho. After the examination, the doctor reported that respondent had "a bad case of silicosis," which would preclude the performance of any hard manual labor. That was the first intimation respondent had that he had contracted silicosis or any other lung disease. Shortly thereafter, the doctors for the veterans' bureau examined respondent and confirmed the diagnosis made by Dr. Mowry.

The disease suffered by claimant is a type of pneumoconiosis known as silicosis.

"The clinical symptoms of silicosis are shortness of breath, decreased chest expansion and lessened capacity for work, these due to a diffuse nodular fibrosis rather evenly distributed throughout both lungs, which reduces the lung air space and lessens the elasticity of the pulmonary tissues. This process may be well advanced before the patient becomes aware of any discomfort. The shortness of breath seldom reaches a degree sufficient to disturb the patient, except when sudden violent exercise by creating a sudden demand for large amounts of oxygen causes dyspnea. The dizziness, general weakness and headache often mentioned as symptoms of silicosis are indirect results of this dyspnea. There is no fever.

"Silica dust inflicts injury to the lungs, not because of the physical properties of the individual particles, as the hard, sharp particles of quartz and carborundum; but its danger lies purely in its poisonous chemical action. Because of this, it causes tiny areas of necrosis in the walls of the lymph spaces of the alveoli in which it is deposited, at which necrotic points, by ways of healing, there develops fibrosis and a proliferation of the surrounding epithelial cells, the latter explaining the nodule formation.

"Silicosis is a progressive disease, the lung changes continuing to develop for one or two years after complete removal of the individual from the silica hazard, this advance probably due to the continued chemical action of the silica stored in the lung tissues." Reed & Emerson, The Relation Between Injury and Disease, p. 183.

Accord: Bulletin No. 13, United States Department of Labor, Division of Labor Standards, Summary Reports of National Silicosis Conference Submitted to the Secretary of Labor by Conference Committees, February 3, 1937.

It is evident, as shown by the authority just quoted, that, in most if not all cases, the symptoms of the disease do not manifest themselves until after a long period of exposure to silica dust and that an individual may not become aware of any disability until long after he has ceased work.

The only question for determination in the case at bar is whether a claim for the occupational disease of silicosis is barred when filed more than one year after the last exposure to silica dust. The answer to this question must be determined from an examination of our statutes relating to industrial insurance.

The trial judge in a well considered memorandum opinion stated:

"After a careful consideration of the authorities, I am of the opinion.

"1. That subdivision (d) of § 7686, Rem. Rev. Stat., has no application to claims for disability resulting from occupational diseases.

"2. That, having in mind the previous decisions of the supreme court construing § 7675 and § 7686, Rem. Rev. Stat., the legislatures of 1937 and 1939 expressly failed to either amplify or extend the meaning of the word 'injury' so as to include occupational diseases. On the contrary, such 1937 and 1939 laws evidence a legislative intent that claims for disability resulting from occupational diseases should be limited only as

provided in such later enactments. Had the legislature intended otherwise, it would have been so provided. None of the language in either the 1937 or 1939 occupational disease laws evidences any legislative intent to bar a claim unless it is filed within one year from the date of last injurious exposure. On the contrary, the provisos recognize the medical fact that such diseases may be quiescent and nondisabling for over a year after exposure."

We are in accord with the conclusion reached by the trial court.

The department was of the opinion that claims of this nature could not be considered unless filed within one year after the last exposure to silica dust which caused the disease. The opinion was based upon Rem. Rev. Stat., § 7686(d).

Prior to 1927, Remington's Compiled Statutes, § 7686 (d), read:

"No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right thereto accrued."

At that time, Remington's Compiled Statutes, § 7675, provided:

"The words 'injury' or 'injured' as used in this act refer only to an injury resulting from some fortuitous event as distinguished from the contraction of disease."

This court construed the provisions to which we have just referred in the cases of Stolp v. Department of Labor & Industries (1926), 138 Wash. 685, 245 Pac. 20; Depre v. Pacific Coast Forge Co. (1927), 145 Wash. 263, 259 Pac. 720; and Fee v. Department of Labor & Industries (1929), 151 Wash. 337, 275 Pac. 741. In those cases it was held that injury was the result of a fortuitous event and that an injured employee had one year within which to file a claim after the injury had developed.

Subsequent to those decisions, the legislature in 1927, Laws of 1927, chapter 310, pp. 818, 847, amended these two sections to read as follows:

"The word 'injury' as used in this act means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom."

"No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the rights of dependents or beneficiaries accrued."

These provisions have not been amended since and are known as Rem. Rev. Stat., § 7675 [P. C. § 3470], and Rem. Rev. Stat., § 7686 (d).

In passing upon the amendments, this court, in *Ferguson v. Department of Labor & Industries,* 168 Wash. 677, 13 P. (2d) 39, and *Sandahl v. Department of Labor & Industries,* 170 Wash. 380, 16 P. (2d) 623, held that the legislature intended to compel the filing of a claim within one year after the date of the injury and that the date of the injury was when there occurred a "sudden and tangible happening of a traumatic nature producing an immediate or prompt result, and occurring from without."

In *Seattle Can Co. v. Department of Labor & Industries,* 147 Wash. 303, 265 Pac. 739, we held that one poisoned by benzol acid fumes was protected by the workmen's compensation act and was injured within the meaning of its provisions which obtained prior to 1927. Later, during 1931, we held in *Pellerin v. Washington Veneer Co.,* 163 Wash. 555, 2 P. (2d) 658, that disability caused by carbon bisulphide poisoning was not an injury within the act as amended by the 1927 act. In passing upon the question, it was said:

"The manifest intention of the legislature in the enactment of the new definition of injury was to make

more certain the definition of injury and make it apply strictly to sudden and tangible happenings occurring from without of a traumatic nature producing an immediate or prompt result, as distinguished from anything like an occupational disease."

In 1937, the legislature passed an act, Laws of 1937, chapter 212, p. 1031, amending Rem. Rev. Stat., § 7679, which provided for the compensation of workmen suffering occupational diseases. This act was amended in 1939 by passage of the Laws of 1939, chapter 135, p. 382. From these amendments, we find that the statute, Rem. Rev. Stat. (Sup.), § 7679-1, provides:

"Compensation shall be payable for disabilities sustained or death incurred by an employee resulting from the following occupational diseases: . . .

"(21) Asbestosis or silicosis (including anthracosilicosis and silicotuberculosis) resulting from exposure to heavy concentrations of finely divided quartz or other forms of free silica (SiO2): *Provided, however,* That no workmen shall be entitled to compensation for asbestosis or silicosis specified herein:

"a. Unless he was employed within the State of Washington for two years immediately prior to the date of claim for said occupational disease; and

"b. If the inception of such disease originated outside the State of Washington unless it be determined that the said disease was continually quiescent and non-disabling for two years prior to the date of injurious exposure in the State of Washington and that such exposure during his employment in the State of Washington activated the quiescent disease to the extent of disability; . . ."

It will be noted that the legislature in the original act used the word "injury" and defined it, while in the occupational disease act it used the word "disability" but gave it no definition. It is obvious from the proceedings of the legislature that in passing the last act it had in mind that a different ruling should apply to those suffering from occupational disease when the

word disability was used, otherwise the word injury, already defined, would have been employed. Under such circumstances we must assume that the legislature used the word "disability" in the 1937 and 1939 acts in the sense in which it was then understood in the law.

■ Disability means the impairment of the workman's mental or physical efficiency. It embraces any loss of physical or mental functions which detracts from the former efficiency of the individual in the ordinary pursuits of life. It connotes a loss of earning power. 2 Schneider, Workmen's Compensation Law (2d ed.) 1332, § 400; 28 R. C. L. 819, § 105; *London Guarantee & Accident Co. v. Industrial Commission,* 70 Colo. 256, 199 Pac. 962.

The difference between the meaning of the words is more apparent when we consider the distinct difference between traumatic injury and occupational disease. The former is one of notoriety, a happening which can be fixed at a point in time, while the latter, especially silicosis, has a slow and insidious approach and in many cases does not manifest itself until after the lapse of a considerable length of time.

Appellant argues that the statute of limitations starts to run from the date of the last "injurious exposure" and cites in support of that contention, *Calhoun v. Washington Veneer Co.,* 170 Wash. 152, 15 P. (2d) 943, followed in *Grant v. Fisher Flouring Mills Co.,* 181 Wash. 576, 44 P. (2d) 193. These cases hold that, in common-law actions under the factory act, the three-year statute of limitations commences to run from the time the workman was last exposed to the unlawful working conditions that caused or materially contributed to the disability.

Appellant contends that this rule should apply in this

case and that the one-year provision applicable to traumatic injury in workmen's compensation claims would bar respondent's claim for disability, resulting from an occupational disease, because not filed within one year from the last exposure.

However, while this may be the rule in common-law actions, we see no reason and find no authority to extend it to a case for claim for compensation. The former cases are based upon tort and the gist of the action is a wrongful act or neglect on the part of the employer and of course would be subject to the general laws of limitations of actions.

The claim for compensation under the workmen's compensation act is governed by the provisions of. that act. Inasmuch as the legislature failed or refused to definitely apply the one-year limit to claims filed for occupational diseases, we must conclude that there is no statute governing the time in which a claim for injuries caused by an occupational disease may be filed.

Another reason for so holding is that the very nature of the disease indicates that the legislature never intended to refuse relief to those workmen who did not know and could not know that they had a disabling disease until long after contact with the cause of the disease and after a year had expired since the last exposure.

Counsel for respondent has cited many cases from other states which consider the question before us. However, the statutes construed and the methods of enactment are so different from ours that we find them of no particular aid in construing the act under consideration.

We hold, as did the trial court, that the limitations statute, Rem. Rev. Stat., § 7686(d), has no application to occupational diseases and that respondent's claim

was timely filed and should have been allowed by the department.

The judgment is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and DRIVER, JJ., concur.