[No. 300-41204-1.   Division One—Panel 1.   December 28, 1970.]

ROTHSCHILD INTERNATIONAL STEVEDORING COMPANY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Roberts, Shefelman, Lawrence, Gay & Moch* and *James S. Turner*, for appellant.

*Slade Gorton, Attorney General*, and *Gosta E. Dagg, Assistant*, for respondent.

JAMES, C. J.—Vito Laudadio sustained an industrial injury on August 2, 1961, while employed by Rothschild International Stevedoring Company. The Department of Labor and Industries found him to be permanently and totally disabled and placed him on the pension rolls. The fact of Laudadio's total permanent disability is not at issue.

Pursuant to RCW 51.16.120,[1] Rothschild applied for second injury fund relief. The department's denial of relief was affirmed by the Board of Industrial Insurance Appeals. Rothschild appealed the board's ruling to the Pierce County Superior Court. We now consider Rothschild's appeal from the trial judge's order granting the department's motion to dismiss.

■ A motion to dismiss in an industrial insurance appeal is equivalent to a motion for summary judgment. It requires a reading of the appeals board record to determine if there is sufficient substantial evidence to establish a prima facie case for a factual determination. *Sawyer v. Department of Labor & Indus.*, 48 Wn.2d 761, 296 P.2d 706 (1956).

The statute requires that any apportionment of costs between the employer and the department shall be based upon an evaluation of the workman's "disability" by medical experts.

A fair summary of the medical testimony is reflected in the testimony of Laudadio's treating physician. Laudadio's doctor testified that in his opinion the physical injuries sustained on August 2, 1961, would not ordinarily result in total permanent disability. In Laudadio's case, however, the doctor believed that the injury "triggered" a "traumatic neurosis" which was totally disabling. It was the doctor's opinion that the main factors which contributed to produce the traumatic neurosis were Laudadio's "age, general frailty, [and] general physical condition."

---

[1]"Whenever a workman has sustained a previous bodily infirmity or disability from any previous injury or disease and shall suffer a further injury or disease in employment covered by this title and become totally and permanently disabled from the combined effects thereof, then the accident cost rate of the employer at the time of said further injury or disease shall be charged only with the accident cost which would have resulted solely from said further injury or disease, had there been no preexisting disability, and which accident cost shall be based upon an evaluation of the disability by medical experts. The difference between the charge thus assessed to the employer at the time of said further injury or disease and the total cost of the pension reserve shall be assessed against the second injury account."

It was the treating physician's estimate which he "sort of picked out of the air" that Laudadio's injury would "ordinarily yield something like a 25% permanent partial disability as a maximum, . . ." The testimony of Rothschild's second medical expert was to the same effect except that he believed that the "breakdown should be 50% the responsibility of the last injury, but the other 50% should certainly be spread over the other employers for whom he had worked over that thirty years."

Laudadio had from time to time sustained injuries including a back sprain in 1940 for which he wore a back brace for a short time, a back sprain in 1943, a left shoulder injury in 1948, an injury to his left foot in 1955, and a back sprain in 1957. Most significantly however, there was no evidence that any injury sustained by Laudadio had been other than temporarily disabling. Up to the time of his final disabling injury of August 2, 1961, Laudadio was doing "everything" required of a longshoreman.

It is Rothschild's contention that its medical evidence is sufficient to present a question of fact as to whether or not Laudadio suffered from a "previous bodily infirmity or disability" which, under the statute, is in some degree accountable for his ultimate total permanent disability.

A similar contention by a last employer was considered in *Donald W. Lyle, Inc. v. Department of Labor & Indus.*, 66 Wn.2d 745, 405 P.2d 251 (1965). In *Lyle*, the court found that the medical evidence established that the permanently disabled workman had, prior to his ultimate disabling injury, suffered from a preexisting degenerative arthritis which was quiescent and non-disabling. The medical evidence further established that the arthritic condition was "lighted up," or aggravated, by the injury, and the workman's permanent disability was due to the combined effects of both the preexisting condition and the industrial injury.

Although the permanent total disability was found to be "due to the combined effects of both," *Donald W. Lyle, Inc. v. Department of Labor & Indus., supra* at 746, the employer's claim was nevertheless rejected. As con-

strued in *Lyle,* the statute requires medical evidence of "a known, preexisting disabling injury or condition, . . ." *Donald W. Lyle, Inc. v. Department of Labor & Indus., supra* at 748. Evidence of a prior "infirmity" is not enough. In other words, the "combined effects" which will afford a last employer second injury fund relief must be the product of a prior "disability" combined with the disability attributable to the last injury.

In *Lyle,* the ultimate injury "lighted up" a latent degenerative arthritis—a non-disabling "infirmity." The workman's permanent disability was due to the combined effects of the latent arthritis and the injury. Laudadio's ultimate injury "triggered" a traumatic neurosis which was a latent threat because of his age, general frailty, and general physical condition—a non-disabling "infirmity." His permanent disability is due to the combined effects of the latent neurosis and the injury.

But in neither this case nor in *Lyle* was the total permanent disability due to the combined effects of an ultimate industrial injury and a "known, preexisting *disabling* injury or condition, . . ." (Italics ours.) *Donald W. Lyle, Inc. v. Department of Labor & Indus., supra* at 748.

■ As is pointed out in *Lyle,* second injury fund relief is intended to encourage the hiring of previously *handicapped* workmen. As defined in *Lyle,* a "handicapped" workman is one who has suffered a known disabling injury or condition. Laudadio's total permanent disability was triggered by the injury which he sustained on August 2, 1961. No "disability" preexisted that injury. In a younger and stronger man the injury probably would not have resulted in total permanent disability. In Laudadio's case, it did.

We are in accord with the trial judge's conclusion that under the rule of *Lyle,* the motion to dismiss the appeal must be granted.

Affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied February 4, 1971.

Review denied by Supreme Court March 2, 1971.