[No. 61179-8-I.  Division One.  April 27, 2009.]

PUGET SOUND ENERGY, INC., *Appellant*, v. ROBERT R. LEE, *Respondent*.

---

*Michael L. Hall* and *Vickie L. Wallen* (of *Perkins Coie, LLP*), for appellant.

*Robert M. McKenna, Attorney General*, and *Marta S. Lowy, Assistant*, for respondent.

¶1 LEACH, J. — Puget Sound Energy (PSE) appeals the denial of second injury fund relief as provided in chapter 51.16 RCW. PSE argues that it was entitled to a jury trial on its appeal from an adverse decision of the Board of Industrial Insurance Appeals. The superior court struck PSE's jury demand and ruled that PSE was not entitled to second injury fund relief as a matter of law because the worker, Robert R. Lee, did not have a previous bodily disability. Because the record presents a question of fact regarding whether Lee had a previous bodily disability, we reverse and remand for a jury trial.

## Background

¶2 Lee began working as a lineman in 1970 and pursued that occupation for over 20 years. In 1992, he sustained an industrial injury that eventually led to his permanent total disability. However, earlier during his career as a lineman, he suffered two industrial injuries and one nonindustrial injury. PSE argues that, as a result of these previous incidents, Lee had a previous bodily disability that contributed to his becoming totally permanently disabled and that PSE is therefore eligible for relief from the second injury fund.

¶3 Lee's first industrial injury occurred in 1979, when he was climbing steel towers as a lineman for International Line Builders in Oregon. In that job, he was required to carry 40 or more pounds of bolts in bags around his waist,

over heavy clothing, and climb steel towers in freezing conditions. Due to his height, he had to stand on his toes, jump, and pull himself up on each steel bar. The strenuous activity eventually caused Lee to have neck and arm pain, which in turn made it even more difficult for him to climb and caused him to drop tools, creating a safety hazard for him and other members of his team. Lee testified that he was laid off because he could not keep up with his team. He moved back to Washington and, although in pain, continued to seek work due to financial need.

¶4 Lee's second industrial injury occurred in 1981, when he was working on a team that was topping a pole for West Coast Electric. He was standing in the bucket, holding a chainsaw, when a four-foot chunk of pole he had just cut fell the wrong way and caught on his hand line, jerking his lower back forward and slamming his body against the side of the bucket. Afterwards, he developed lower back pain and sciatica, which were treated with pain medications and muscle relaxants. He continued to work despite his pain, although he required help from co-workers to complete his duties. He was treated at Stevens Hospital in Edmonds, Washington, for traumatic spondylosis and filed an accident claim. He did not work for about six months following the hospitalization. Eventually, he obtained a medical release to do less strenuous work so he could work in Alaska. With this release, he obtained a less physically demanding job as a foreman supervising other workers. While he was in Alaska, the Department closed Lee's 1981 claim, but he testified that he never received a copy of the order closing his claim. For the next three or four years, Lee had lower back pain for which he needed to take medication in order to be able to work. He testified that from 1981 until his injury in 1992, he had back pain about 30 percent of the time. He described the pain as "something that I just grit my teeth and deal with." The pain sometimes would alter the way he performed his job and would require him to ask others for help.

¶5 His third injury occurred in 1987. As he bent over to pick up a carrot from the floor, he felt a searing, stabbing

pain in his neck and back, similar to the pain he had felt after the tower-climbing injury in 1979. Lee immediately took pain medication and went to bed for the entire weekend. Although experiencing severe pain, he returned to work the following Monday but used ice packs on his back every day for several weeks and sought chiropractic treatment. Following this injury, he had difficulty reaching overhead and lifting, and relied on co-workers to help him with his job because of back and neck pain. He testified that this pain recurred frequently after 1987, and he experienced it about 30 to 40 percent of the time.

¶6 Lee's final industrial injury occurred while he was working as a lineman for PSE. He began working for PSE on March 26, 1992. On October 5, 1992, while working on an electrical pole, Lee lost his footing, dropped about eight feet, and then caught himself by grabbing onto a cable with his right hand. He hung by his right arm from the cable for several moments until he regained his footing on the pole. Although he felt immediate pain in his right shoulder, he continued to work that day. A few days later, the pain became unbearable, and Lee began medical treatment. He was initially placed on light duty and eventually laid off on February 5, 1993. Shortly thereafter, he moved to California, where he obtained a job but let his co-workers do the heavy work.

¶7 Lee began seeing Dr. Dobkin on November 4, 1993. Between 1996 and 2000, Dr. Dobkin performed four surgeries to correct problems in Lee's cervical spine. After the third surgery in February 1999, Dr. Dobkin referred Lee to Dr. Stoney, a pain management specialist.

¶8 From February 1999 through April 2003, Dr. Stoney's records indicate that Lee had no lower back problems and steady improvement in his neck. Dr. Stoney anticipated Lee would be able to return to work with some restrictions. In July 2003, Dr. Stoney's records indicate that Lee reported recurring mid and lower back pain and also that Lee had a limited ability to sit, stand, or walk, due to pain. In the same report, Dr. Stoney stated, for the first time, that Lee was

unable to maintain gainful employment due to his limited tolerance for sitting, standing, and lifting. Dr. Stoney testified that the mid and lower back pain did not result from the 1992 accident but maintained that Lee's neck problems alone were totally and permanently disabling.

¶9 Throughout his treatment with Drs. Dobkin and Stoney, Lee never told his physicians that he had sustained two industrial injuries and one nonindustrial injury before 1992. He did not report any previous medical conditions affecting his lower back, neck, or right arm. In addition, he did not disclose any previous injuries or conditions to Dr. Gritzka, the physician who conducted an independent medical exam (IME) on behalf of PSE. However, PSE discovered evidence of these injuries and questioned Lee and Dr. Gritzka about them in depositions. Lee described the three previous injuries and symptoms resulting from them.

¶10 Dr. Gritzka testified that, in his opinion, Lee was partially permanently disabled before the 1992 accident as a result of his previous injuries and that these injuries combined with the 1992 injury to cause total permanent disability. He testified that Lee had two separate, ratable permanent impairments before 1992: a category two impairment of the lumbar spine under WAC 296-20-280 and a category two impairment of the cervical spine under WAC 296-20-240. He further testified that Lee's medical records indicated that his cervical spine had significant degenerative changes in 1988, with no appreciable change between 1988 and 1994. In addition, Dr. Gritzka stated that restrictions from Lee's previous low back impairment affected his ability to perform job functions:

Q: If Mr. Lee testifies that he has trouble sitting for long periods that he used to be able to do when he was a foreman of power line crews or running crews, and that he can't do so because of pain in his lower back, is that something that's more likely due to the neck injury he had in 1992 or to his preexisting low back impairment?

A: It's more likely due to his pre-existing low back impairment.

Dr. Gritzka also testified that Lee would not be totally and permanently disabled if he had not had the previous impairment to his cervical spine.

¶11 Dr. Gritzka's initial IME report was prepared before Dr. Gritzka learned of Lee's previous injuries and before he had an opportunity to review medical records regarding those injuries. It indicated that Lee's previous impairment was "not disabling" but became disabling in combination with the 1992 injury. Dr. Gritzka explained this apparent discrepancy between his initial report and his later testimony as follows:

> Well, the first problem is that disability and impairment aren't the same thing. As I understand Washington's use of the term disability, it's really more consistent with the [American Medical Association (AMA)] use of impairment. Disability means how something affects your ability to do activities of daily living that include work, and impairment means what's physically wrong with you. They aren't the same thing. I think that Mr. Lee had impairment, using the AMA terms, prior to 1992, but it wasn't causing him to lose work. In other words, he didn't have a disability using the AMA Guides' terminology. But if impairment and disability are synonymous, as they seem to be in Washington, then he would have had a disability.[1]

In other words, Dr. Gritzka testified that by "not disabling," he meant Lee was able to work despite the condition and did not mean that Lee did not have a loss of function in his lower back that resulted in a ratable impairment that qualified as a permanent partial disability. Dr. Gritzka testified that Lee's level of impairment of his cervical spine increased to a category three impairment after the 1992

---

[1] We note that "impairment" and "disability" are not synonymous, and that the second injury fund statute requires that the worker have a previous bodily disability. However, we also note that Dr. Gritzka's testimony merely raises a question of fact regarding whether Lee had a previous bodily disability, which should be determined by a jury that has been instructed as to the correct legal standard.

injury and that the 1992 injury was not the cause of any impairment to his lumbar spine.

¶12 Dr. Gritzka also testified that Lee's total disability consisted of the combined effects of impairment of his neck and of his lower back. In correspondence to Lee's counsel in 2003 and 2004, Dr. Dobkin expressed a similar assessment. Dr. Gritzka opined that without the preexisting lower back impairment Lee would not have been totally disabled as the result of his 1992 injury.

¶13 In 2004, the Department of Labor and Industries (Department) awarded Lee a pension as a permanently totally disabled worker. PSE requested second injury fund relief on the basis that Lee had a previous bodily disability that combined with his 1992 injury to cause his permanent total disability. The Department denied the request, and PSE appealed to the Board of Industrial Insurance Appeals (Board). The industrial appeals judge affirmed the Department's orders. PSE appealed, and the Board affirmed in a 2-1 decision. The majority concluded:

> A preponderance of credible evidence shows that prior to the 1992 industrial injury, Mr. Lee's lumbar and cervical spine conditions did not affect his ability to remain active and to perform vigorous, heavy labor. Even if he accomplished this level of activity through stoicism and working through pain, the fact remains that the level of pain that he lived with prior to the 1992 injury did not substantially impact his functioning. Mr. Lee's pre-existing lumbar and cervical conditions did not become disabling until after the 1992 industrial injury and, therefore, cannot be considered a "previous bodily disability," per RCW 51.16.120(1).[2]

The dissenting member concluded that second injury fund relief was appropriate:

> [Dr. Gritzka] testified credibly that Mr. Lee's total disability was due to a combination of pre-existing disabilities and the industrial injury which should entitle Puget Sound Energy to

---

[2] *In re Lee*, Nos. 04 22408 & 04 22409, 2006 WL 3520114, at *2 (Wash. Bd. of Indus. Ins. Appeals Sept. 18, 2006).

second injury fund relief. Denial of second injury fund relief ignores the repeated instances in which Mr. Lee's ratable disabilities significantly affected his work performance. The fact that these problems were not clearly "manifest" at the time of the industrial injury does not eliminate second injury fund relief because his disabilities were permanent and manifested repeatedly over a period of many years. The legislative elimination of the requirement that a pre-existing disability be known to the employer for second injury fund relief to be granted supports the granting [sic] in circumstances such as these.[3]

PSE appealed the Board's decision in superior court and filed a timely demand for a jury of six.

¶14 Six months after PSE filed its jury demand and 24 days before trial, the Department moved to strike the jury demand on the ground that there were "no material facts in dispute and thus, no factual issues for determination by a jury. The issue is a question of law that should be tried to the court, not a jury."[4] The Department argued that the only remaining issue was the construction and interpretation of the second injury fund statute, RCW 51.16.120. It argued that

whether and how the second-injury fund statute applies to the facts of Mr. Lee's condition as it pre-existed the injury is the sole question in the case. In order to determine this, the court must perform the functions explicitly reserved for the judiciary; there is simply no role for a jury to play.

PSE objected, arguing that it was entitled to a jury trial to review the Board's decision. Additionally, counsel for PSE provided jury instructions from a case that he had previously tried regarding an employer's entitlement to second injury fund relief, stating that he planned to submit similar instructions in this case.

¶15 The superior court granted the motion to strike the jury demand, ruling that there were no material issues of

---

[3] *Lee*, 2006 WL 3520114, at *4.

[4] PSE did not object to the timing of this motion.

fact in dispute that could establish a previous bodily disability. The superior court concluded that Lee did not have a previous bodily disability under RCW 51.16.120 as a matter of law because there was no evidence that he was symptomatic, required accommodation, or was limited in his ability to perform his job at the time of the injury. The court also concluded, in the alternative, that PSE was not entitled to second injury fund relief as a matter of law because there was no evidence that, before the 1992 injury, Lee suffered from a permanent disability that adversely affected his wage-earning ability. PSE argues that there were material facts in dispute and that it is, therefore, entitled to a jury trial.

Discussion

▮▮ ¶16 Whether PSE is entitled to a jury trial is a question of law that we review de novo.[5] Appeals to the superior court from decisions by the Board are governed by RCW 51.52.115, which provides that "either party shall be entitled to a trial by jury upon demand, and the jury's verdict shall have the same force and effect as in actions at law." Thus, either party is entitled to a jury trial to resolve factual disputes on appeal from a decision by the Board.[6] Therefore, we must determine whether there are any material facts in dispute here. We conclude that there are.

¶17 PSE argues that it presented substantial evidence that Lee had a previous bodily disability. The Department, on the other hand, argues that no trier of fact could have concluded that Lee had a previous bodily disability because under *Rothschild International Stevedoring Co. v. Department of Labor & Industries*,[7] the employer must show that

---

[5] *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

[6] *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353, 962 P.2d 844 (1998).

[7] 3 Wn. App. 967, 478 P.2d 759 (1970).

the preexisting condition impacted the worker's ability to perform work duties, and it argues that PSE failed to make this showing. Specifically, the Department argues that there was no evidence that Lee was symptomatic, required accommodation, or was limited in his ability to perform his job at the time of the injury. PSE argues that *Rothschild* does not require the employer to show that the worker was symptomatic, required accommodation, or was limited in his ability to perform his job at the time of the injury in order to establish a previous bodily disability.

¶18 The legislature created the second injury fund to encourage employers to hire previously disabled workers by providing that, if a disabled worker suffers a subsequent injury on the job, the employer is not liable for a greater disability than actually results from the subsequent injury.[8] The relevant statute, RCW 51.16.120(1), provides, in part:

> Whenever a worker has a previous bodily disability from any previous injury or disease, whether known or unknown to the employer, and shall suffer a further disability from injury or occupational disease in employment covered by this title and become totally and permanently disabled from the combined effects thereof . . . a self-insured employer shall pay directly into the reserve fund only the accident cost which would have resulted solely from said further injury or disease, had there been no preexisting disability, and which accident cost shall be based upon an evaluation of the disability by medical experts. The difference between the charge thus assessed to such employer at the time of said further injury or disease and the total cost of the pension reserve shall be assessed against the second injury fund.

In order for an employer to be eligible for second injury fund monies, the worker must have (1) a previous bodily disability from any previous injury or disease, whether known or unknown to the employer; (2) suffered a further disability from injury or occupational disease in employment; and (3)

---

[8] *Jussila v. Dep't of Labor & Indus.*, 59 Wn.2d 772, 778, 370 P.2d 582 (1962).

become totally and permanently disabled from the combined effects of the previous bodily disability and the later industrial injury or occupational disease. Here, the parties dispute whether Lee had a previous bodily disability and, if so, whether his total and permanent disability resulted from the combined effects of the previous bodily disability and the 1992 industrial injury, or solely from the 1992 injury.

¶19 The legislature has not defined "previous bodily disability." A definition that makes it easier for an employer to recover from the fund will support the fund's purpose, while a definition making recovery too difficult will discourage an employer from hiring a previously disabled worker.[9] Our Supreme Court has cautioned that other elements of the Industrial Insurance Act, Title 51 RCW, must be considered when interpreting RCW 51.16.120.[10] These include the premises that each industry should be responsible for costs arising out of industrial injuries suffered by its employees and that each employer's premium reflect its own cost experience to encourage safety and avoid an unfair burden upon other employers.[11]

¶20 Washington courts have not articulated a definition for "previous bodily disability." However, the Board has articulated a number of times a definition that focuses on whether the worker has a history of a prior medical condition having a substantial negative impact upon the worker's physical or mental functioning, using the following definition for "disability":

"[T]he impairment of the workman's mental or physical efficiency. It embraces any loss of physical or mental functions which detracts from the former efficiency of the individual in

[9] *Jussila*, 59 Wn.2d at 779.

[10] *Jussila*, 59 Wn.2d at 779.

[11] *Jussila*, 59 Wn.2d at 779.

the ordinary pursuits of life. It connotes a loss of earning power."[12]

The historical context in which RCW 51.16.120 was adopted supports the Board's use of this definition of "disability." In *Henson v. Department of Labor & Industries*,[13] the court considered the definition of "disability" in the context of 1937 and 1939 amendments to occupational disease provisions of the workmen's compensation act. After noting that the legislature had used the word "disability" in these amendments but provided no definition, the court stated that it must assume that the legislature used "disability" "in the sense in which it was then understood in the law."[14] The court then defined "disability" as stated above. Less than four months after the *Henson* decision, the legislature adopted RCW 51.16.120, again using the word "disability" without providing a definition. We thus may presume the legislature's acquiescence in the definition provided by the court less than four months earlier.[15]

¶21 In the workers' compensation context, courts recognize two separate kinds of disability: permanent partial disability and permanent total disability.[16] "Permanent total disability" is the inability to perform or obtain work suitable to the worker's qualifications and training.[17] Permanent partial disability is measured by the loss of bodily

---

[12] *In re Pate*, No. 90 4055, 1992 WL 160673, at *2, 1992 WA Wrk. Comp. LEXIS 694 (Wash. Bd. of Indus. Ins. Appeals May 7, 1992) (quoting *Henson v. Dep't of Labor & Indus.*, 15 Wn.2d 384, 391, 130 P.2d 885 (1942)).

[13] 15 Wn.2d 384, 130 P.2d 885 (1942).

[14] *Henson*, 15 Wn.2d at 390-91.

[15] *See Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 327 n.3, 971 P.2d 500 (1999).

[16] *Ellis v. Dep't of Labor & Indus.*, 88 Wn.2d 844, 851, 567 P.2d 224 (1977).

[17] *Fochtman v. Dep't of Labor & Indus.*, 7 Wn. App. 286, 294, 499 P.2d 255 (1972).

function and is established by medical testimony.[18] The mere existence of a previous permanent partial disability does not entitle an employer to second injury fund relief if the worker later becomes totally disabled.[19] But where a worker sustains a subsequent industrial injury that combines with a previous permanent partial disability to cause permanent total disability, the employer is liable only for the costs that would have resulted from the industrial injury that occurred while working for that employer, and the costs proximately caused by the previous disability are assessed against the second injury fund.[20]

¶22 Our Supreme Court addressed whether a worker's previously existing condition qualified as a "previous bodily infirmity or disability"[21] for purposes of the second injury fund in *Donald W. Lyle, Inc. v. Department of Labor & Industries*.[22] There, the employer argued that it was entitled to second injury fund relief because the worker's total and permanent disability resulted from the combined effects of an industrial injury and a preexisting disease.[23] The preexisting disease was "a condition of degenerative arthritis," which was "latent, or quiescent, and not disabling" before the industrial injury but "was 'lighted up,' or aggravated, by the injury and the employee's permanent disability was due to the combined effects of both."[24] Even though the worker's permanent total disability was caused in part by the previous condition, the court held that the employer was not entitled to second injury fund relief

---

[18] *Fochtman*, 7 Wn. App. at 294 (citing *Franks v. Dep't of Labor & Indus.*, 35 Wn.2d 763, 215 P.2d 416 (1950); *Page v. Dep't of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958)).

[19] *Jussila*, 59 Wn.2d at 777-80.

[20] *See Jussila*, 59 Wn.2d at 777-78.

[21] Former RCW 51.16.120 (Laws of 1961, ch. 23, § 51.16.120).

[22] 66 Wn.2d 745, 405 P.2d 251 (1965).

[23] *Lyle*, 66 Wn.2d at 746.

[24] *Lyle*, 66 Wn.2d at 746.

because the worker's preexisting condition was "an unknown, preexisting and nondisabling condition."[25]

¶23 Six years later, in 1971, this court addressed whether a worker had a previous disability for purposes of the second injury fund in *Rothschild*. There, the worker

> had from time to time sustained injuries including a back sprain in 1940 for which he wore a back brace for a short time, a back sprain in 1943, a left shoulder injury in 1948, an injury to his left foot in 1955, and a back sprain in 1957. Most significantly however, there was *no evidence that any injury sustained by [the worker] had been other than temporarily disabling*. Up to the time of his final disabling injury of August 2, 1961, [he] was doing "everything" required of a longshoreman.[26]

There, as in *Lyle*, the industrial injury had "triggered" a latent condition (a "traumatic neurosis"), which combined with the injury to cause permanent total disability.[27] This court held that the worker did not have a previous disability because he did not have a " 'known, preexisting disabling injury or condition . . . .' "[28] Here, unlike in *Rothschild*, substantial evidence was offered to show that Lee had a permanent disability comprised of two separate conditions that substantially impaired his physical function. Dr. Gritzka testified that Lee had two permanent partial disabilities, and Lee's testimony regarding his previous injuries and symptoms supported Dr. Gritzka's opinion. The evidence does not show that Lee had a latent condition that was triggered by the injury, as in *Lyle* and *Rothschild*, but rather that Lee had ongoing, intermittent symptoms from previous injuries that substantially impaired his ability to function before his 1992 injury. A jury could conclude that this partial loss of function was permanent and would continue to produce symptoms intermittently, thereby con-

---

[25] *Lyle*, 66 Wn.2d at 748.

[26] *Rothschild*, 3 Wn. App. at 969 (emphasis added).

[27] *Rothschild*, 3 Wn. App. at 970.

[28] *Rothschild*, 3 Wn. App. at 970 (emphasis omitted) (alteration in original) (quoting *Lyle*, 66 Wn.2d at 748).

tributing to his permanent total disability, and that without this earlier permanent impairment the 1992 injury would not have been permanently disabling.

¶24 The version of RCW 51.16.120 in effect when *Lyle* and *Rothschild* were decided provided:

> Whenever a workman has sustained a previous bodily infirmity or disability from any previous injury or disease and shall suffer a further injury or disease in employment covered by this title and become totally and permanently disabled from the combined effects thereof, then the accident cost rate of the employer at the time of said further injury or disease shall be charged only with the accident cost which would have resulted solely from said further injury or disease, had there been no preexisting disability, and which accident cost shall be based upon an evaluation of the disability by medical experts. The difference between the charge thus assessed to the employer at the time of said further injury or disease and the total cost of the pension reserve shall be assessed against the second injury account.[29]

Following *Rothschild*, the legislature made several changes to RCW 51.16.120, including removal of the word "infirmity" from the first sentence to clarify that the worker must have a previous bodily *disability* in order for the employer to qualify for second injury fund relief.[30] Later, in 1984, the legislature inserted "whether known or unknown to the employer" after the word "disease," thus eliminating any requirement that the employer know about the worker's previous bodily disability.[31] This change was made because the Department had "interpreted statutory and case law to require that an employer must have knowledge of an employee's previous injury in order to qualify for second

---

[29] Former RCW 51.16.120 (Laws of 1961, ch. 23, § 51.16.120).

[30] Former RCW 51.16.120 (Laws of 1977, 1st Ex. Sess., ch. 323, § 13). Minor changes not relevant here were also made in Laws of 1972, 2d Ex. Sess., ch. 43, § 13.

[31] Former RCW 51.16.120 (Laws of 1984, ch. 63, § 1).

injury fund relief."[32] The knowledge requirement was inconsistent with laws that limit employers' rights to inquire about an applicant's physical condition, and the legislature was concerned that employers may unfairly be denied use of the second injury fund.[33] In addition to clarifying that the statute does not require knowledge of the disability by the employer, the legislature's 1984 amendment in response to Board decisions also demonstrates its awareness of the Board's interpretation of the statute. Thus, just as legislative inaction following a court decision demonstrates its acquiescence in the same, the legislature's decision not to provide a definition for "previous bodily disability" in 1984 or in subsequent amendments to the second injury fund shows legislative acquiescence in the Board's interpretation of that term.

¶25 Neither the statute nor the common law requires that a worker be continually symptomatic, require accommodation, or be limited in his ability to perform his particular job *at the time of the injury* as the Department argues. By removing the word "infirmity" from the statute, the legislature merely ratified the primary holdings of *Lyle* and *Rothschild*, which require that the worker have a "disability" rather than a latent, nondisabling condition. While this excludes conditions that have never caused symptoms prior to the industrial injury, the legislature has not excluded disabilities characterized by intermittent symptoms that happen to be temporarily latent at the time of the injury. Here, Lee testified that after his 1987 nonindustrial injury he had symptoms that prevented him from being able to perform his work about 30 to 40 percent of the time. These intermittent symptoms recurred at irregular, unpredictable intervals often several months apart. PSE presented the expert testimony of Dr. Gritzka that these symptoms were caused by a permanent loss of function in Lee's lower back. Thus, the fact that Lee did not experience

---

[32] 1984 FINAL LEGISLATIVE REPORT, 48th Wash. Leg., at 139.

[33] 1984 FINAL LEGISLATIVE REPORT, 48th Wash. Leg., at 139.

symptoms during the six-month period preceding the injury could be consistent with a determination that he had a disability before the 1992 injury.

¶26 Similarly, the fact that a worker has not received accommodations for a previous disability does not eliminate the possibility that a disability existed. Since an employer must know of a worker's disability in order to provide accommodation, the legislature impliedly eliminated any requirement that the worker have received any accommodation for the previous disability when it clarified that the previous disability may be "unknown to the employer."[34] Lee testified that, when his symptoms flared up, he could not perform all of his duties without assistance from his co-workers. Thus, despite the fact that the alleged disability was unknown to PSE before the industrial injury, a question of fact was raised as to whether Lee was actually able to perform all the duties required by his job.

¶27 PSE's medical expert testified that Lee was permanently partially disabled before the 1992 accident. Dr. Gritzka testified that Lee had category two impairments of the lumbar spine and cervical spine before 1992. A category two impairment of the lumbar spine is "[m]ild low back impairment, with mild intermittent objective clinical findings of such impairment but no significant X-ray findings and no significant objective motor loss. Subjective complaints and/or sensory losses may be present."[35] A category two impairment of the cervical spine is "[m]ild cervico-dorsal impairment, with objective clinical findings of such impairment with neck rigidity substantiated by X-ray findings of loss of anterior curve, without significant objective neurological findings."[36] This evidence directly contradicts the Department's contention that Lee did not have a previous bodily disability. By arguing that the court should decide this question as a matter of law, the Depart-

---

[34] Former RCW 51.16.120 (Laws of 1984, ch. 63, § 1).

[35] WAC 296-20-280(2).

[36] WAC 296-20-240(2).

ment essentially contends that Dr. Gritzka's testimony should be ignored. Of course, the credibility of witnesses must be weighed by the trier of fact.

¶28 The Department argues that, even if a jury had been allowed to weigh Dr. Gritzka's testimony and found that Lee had a permanent partial disability, Lee did not have a previous bodily disability. The Department argues that a "permanent partial disability" is not a "disability" because it relates to loss of bodily function rather than to loss of earning power and, therefore, the standard for permanent partial disability does not apply when determining whether a worker has a "previous bodily disability." However, the Department's distinction is misplaced. As discussed above, permanent *total* disability is the inability to perform or obtain work,[37] while permanent *partial* disability is measured by the loss of bodily function.[38] The argument that Lee's previous bodily disability was not a disability because it was not a total disability, i.e., that it did not prevent him from working, begs the question whether the previous disability was a contributing factor in his total disability. By definition, a "previous bodily disability" must be partial.

¶29 We decline to hold that a permanent partial disability is not a disability for purposes of the second injury fund. "Statutes should be interpreted to further, not frustrate, their intended purpose,"[39] and such an interpretation would frustrate the purpose of the second injury fund statute. The purpose of the second injury fund, as stated by our Supreme Court in 1962, is "to encourage the hiring of previously handicapped workmen by providing that the second employer will not, in the event such a workman suffers a subsequent injury on the job, be liable for a greater

---

[37] *Fochtman*, 7 Wn. App. at 294.

[38] *Fochtman*, 7 Wn. App. at 294 (citing *Franks*, 35 Wn.2d 763; *Page*, 52 Wn.2d 706).

[39] *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 99, 864 P.2d 937 (1994).

disability than actually results from the second accident."[40] But an employer must hire workers, whether disabled or not, who are capable of substantially performing the jobs they are hired to perform. If "previous bodily disability" only encompassed impairments that substantially hindered a worker from performing the job for which he or she was to be hired, employers would not be encouraged to hire any worker with a previous bodily disability. Thus, "previous bodily disability" must relate to loss of bodily function. This interpretation is consistent with previous Board decisions in second injury fund cases.

¶30 The Board has correctly adopted a definition of "previous bodily disability" that requires a permanent loss of physical or mental functioning. Although the Board's decisions are not binding on the courts, it is appropriate for us to consider the Board's interpretation of the laws it is charged with enforcing, in addition to the relevant case law.[41] In its decision here, the Board quoted from *In re Kaelin*,[42] where it held:

> "A worker must have a 'previous bodily disability' in order for an employer to qualify for second injury fund relief. Disability means the impairment of the worker's mental or physical efficiency. It embraces any loss of physical or mental functions that detract from the former efficiency of the individual in the ordinary pursuits of life. However, something more than the existence of a prior condition requiring periodic medical attention is required. In the context of second injury fund relief, a pre-existing disability is more than a mere pre-existing medical condition and must, in some fashion, permanently impact the worker's physical and/or mental functioning."[43]

---

[40] *Jussila*, 59 Wn.2d at 778.

[41] *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 836, 125 P.3d 202 (2005) (citing *Jensen v. Dep't of Ecology*, 102 Wn.2d 109, 113, 685 P.2d 1068 (1984)).

[42] No. 04 13345, 2006 WL 2989433, 2006 WA Wrk. Comp. LEXIS 84 (Wash. Bd. of Indus. Ins. Appeals May 10, 2006).

[43] *Lee*, 2006 WL 3520114, at *2 (quoting *Kaelin*, 2006 WL 2989433, at *2, 2006 WA Wrk. Comp. LEXIS 84, at *5-6).

In *In re Pate*,[44] the Board discussed the meaning of "disability" as interpreted in previous case law, including *Henson, Jussila, Lyle,* and *Rothschild*, concluding that "second injury fund relief is not made where the evidence shows that a worker has a history of prior medical conditions but does not show that they had a substantial negative impact on the worker's physical or mental functioning." While a "previous bodily disability" must have a substantial negative impact on the worker's physical or mental functioning, it does not follow that it must have a substantial negative impact on the worker's ability to perform his or her current job. If it did, the worker would be unemployable, in direct contravention of the statute's purpose.

¶31 A review of second injury fund decisions by the Board shows that the determination of whether a worker's medical conditions constituted a previous bodily disability is a highly fact-specific determination, requiring the trier of fact to determine whether the worker had a previous permanent loss of function. In the decisions denying second injury fund relief, the Board's factual findings show no significant loss of physical or mental function. For example, in *In re Olsen*,[45] second fund relief was denied where the Board's findings reflected that none of Olsen's previous conditions interfered with "her ability to engage in ordinary pursuits of daily living." Similarly, the Board denied relief in *In re Norgren*,[46] where it found that the conditions Norgren had before the industrial injury "did not have any negative effect on his ability to work, his social relationships, or activities of his daily living."

[44] No. 90 4055, 1992 WL 160673, at *3, 1992 WA Wrk. Comp. LEXIS 694 (Wash. Bd. of Indus. Ins. Appeals May 7, 1992).

[45] No. 06 16795, 2007 WL 4986259, at *3, 2007 WA Wrk. Comp. LEXIS 195, at *7 (Wash. Bd. of Indus. Ins. Appeals Nov. 13, 2007).

[46] No. 04 18211, 2006 WL 481048, at *9, 2006 WA Wrk. Comp. LEXIS 7, at *23 (Wash. Bd. of Indus. Ins. Appeals Jan. 12, 2006).

¶32 By contrast, decisions granting second injury fund relief show that the worker had a loss of function before the permanently disabling industrial injury. For example, in *In re McKee*,[47] the Board awarded second injury fund relief even though McKee was able to work despite preexisting conditions, which did not prevent her from working altogether but limited her vocational options. The Board stated that

> [t]o be disabling, a pre-existing condition must have had a substantial permanent impact on a worker's functioning. The disability must have clearly detracted from an individual's ability to engage in the ordinary pursuits of life. While disability "connotes a loss of earning power," this is not absolutely required provided that the disability substantially and negatively impacts a worker's daily functioning and efficiency.[48]

In *In re Williams*,[49] the worker had a previous lower back condition that was partially disabling prior to the industrial injury that ultimately led to his becoming permanently totally disabled. The worker "continued to experience the residual symptoms from a prior industrial injury that happened on February 8, 1989" when he sustained a subsequent injury in 1996.[50] Although the worker "was unable to recall the nature and extent of his prior treatment at the time of hearing," the evidence was sufficient to persuade the Board that the previous condition was partially disabling prior to the 1996 industrial injury.[51] Moreover, just as in this case, the worker's symptoms were intermittent and the worker had not received accommodation or a permanent partial disability award for the previous disability. The Board recognized in *Williams* that an impairment need not "be reduced to a

---

[47] No. 04 14107, 2007 WL 1413127, 2007 WA Wrk. Comp. LEXIS 21 (Wash. Bd. of Indus. Ins. Appeals Mar. 26, 2007).

[48] *McKee*, 2007 WL 1413127, at *6, 2007 WA Wrk. Comp. LEXIS 21, at *15 (quoting *Norgren*, 2006 WL 481048, at *6, 2006 WA Wrk. Comp. LEXIS 7, at *14).

[49] No. 00 11219, 2001 WL 1755668, at *1, 2001 WA Wrk. Comp. LEXIS 340 (Wash. Bd. of Indus. Ins. Appeals Dec. 20, 2001).

[50] *Williams*, 2001 WL 1755668, at *1, 2001 WA Wrk. Comp. LEXIS 340.

[51] *Williams*, 2001 WL 1755668, at *1, 2001 WA Wrk. Comp. LEXIS 340.

disability award in order to be considered a previous bodily disability or condition."[52]

¶33 Whether the preexisting condition has permanently impacted the worker's physical and/or mental functioning is a question of fact. The legislature has mandated that the factual issues be decided by a jury on appeal, if requested by any party.[53] Thus, on appeal to the superior court, either party is entitled to a jury trial to resolve disputes regarding whether the worker had a previous bodily disability. The trial court erred because PSE presented substantial evidence showing that Lee had a previous disability. PSE is entitled to a jury trial under RCW 51.52.115.

¶34 Finally, if a jury determines that Lee had a previous bodily disability, the jury must also determine whether that disability was a proximate cause of Lee's total and permanent disability. An industrial injury may have more than one proximate cause.[54] It is the province of the jury to determine the weight of evidence regarding the proximate causes of a worker's disability.[55] Dr. Gritzka testified that Lee's total permanent disability was caused by a combination of the 1992 injury and a previous bodily disability involving Lee's lower back, while Dr. Stoney testified that the 1992 injury did not cause an impairment to Lee's lower back and that Lee's neck injury alone is totally and permanently disabling. PSE is entitled to relief only if Lee's permanent total disability was a combined result of the 1992 injury and a previous bodily disability.[56] Because Drs. Stoney and Gritzka presented conflicting testimony regarding causation, this evidence also must be weighed by a jury.

[52] *Williams*, 2001 WL 1755668, at *1, 2001 WA Wrk. Comp. LEXIS 340.

[53] RCW 51.52.115.

[54] *Wendt v. Dep't of Labor & Indus.*, 18 Wn. App. 674, 684, 571 P.2d 229 (1977).

[55] *See Bennett v. Dep't of Labor & Indus.*, 95 Wn.2d 531, 533-35, 627 P.2d 104 (1981).

[56] *See Jussila*, 59 Wn.2d at 776-78.

Conclusion

¶35 We reverse and remand for proceedings consistent with this opinion.

L au, J., concurs.

¶36 B ecker, J. (dissenting) — Under certain circumstances, a self-insured employer is allowed to avoid the full responsibility of paying benefits for an industrial injury sustained by a worker while working for that employer. To obtain relief from what is called the second injury fund, the employer must prove that the injured has a "previous bodily disability." RCW 51.16.120(1). The majority defines this term as any condition that substantially impaired the worker's ability to function at some point in the past, even if the worker was fully functional at the time of the most recent injury. The majority opinion is not only inconsistent with precedent, it will have the fiscally unfortunate effect of depleting the second injury fund. I respectfully dissent.

¶37 The employee, Robert Lee, had a strenuous 22-year career as an electrical lineman. The injury that rendered him totally unable to work occurred in October 1992, while he was working for Puget Sound Energy (PSE). Before that, he sustained several back and upper body injuries and often had the experience of working through pain. Nevertheless, he kept on working at the hardest physical jobs, those that could be performed only by people in top physical shape.

¶38 At the time of his serious injury in October 1992, Lee was in exactly the same situation as the longshoreman described in *Rothschild International v. Department of Labor & Industries*, 3 Wn. App. 967, 478 P.2d 759 (1970). There was no evidence that any previous injury he sustained "had been other than temporarily disabling," and up to the time of his final injury, he was doing everything required of his job. *Rothschild*, 3 Wn. App. at 969. Even Dr. Gritzka, the physician whose testimony is the principal

support for PSE's position, agreed that Lee's physical condition in October 1992 was not such as to disable him from work.

¶39 In *Rothschild*, the worker had previously sustained several back sprains and injuries to his shoulder and foot. These previous injuries had left him with a "latent" nondisabling condition—"a traumatic neurosis which was a latent threat because of his age, general frailty, and general physical condition." *Rothschild*, 3 Wn. App. at 970. The employer at the time of the final injury was denied second injury fund relief because of a failure to show that the preexisting condition was actually disabling. Evidence of a prior infirmity is not enough.

¶40 The majority states that Lee's case is different from *Rothschild* because a jury might conclude that he had "ongoing, intermittent symptoms from previous injuries that substantially impaired his ability to function." Majority at 883. The record, however, shows that Lee was a fully functional worker through the years up to the time of his 1992 accident. From time to time he had nagging pains, but he did not take time off; he simply took medication, used ice packs, and kept on working.

¶41 Lee did not experience a loss of earning power as a result of his earlier injuries. When he went to work for PSE he needed no accommodations, was not suffering backache or neck pain, was not taking medications, did not feel any effects from his previous accidents, and was performing heavy manual labor without restrictions or functional impairment. Dr. Gritzka testified that before October 1992 Lee was able to continue working at his usual job "in spite of whatever might have been diagnosably wrong with him. . . . [S]ome people can have terrible looking x-rays and might even have a ratable impairment by x-ray criteria, but nevertheless go about doing whatever they want."

¶42 PSE did not hire a handicapped person. Lee himself said there was nothing physical he could not do before the injury he sustained while working for PSE. He testified, "I have been hurt, obviously, throughout my life, but I was in

good shape. I could do 50 one hand push-ups, do 50 on the other side, go back and do a second 50. I could do 1500 flutter kicks in the morning."

¶43 Counsel for PSE managed to elicit from Lee his acknowledgement that after the earlier injuries, from time to time he had to call upon his union brothers to help him do lifting and tugging. PSE makes far too much of this testimony. It would be a rare individual who, after a lifetime of physical labor, would not say the same. If such evidence is enough to establish that a worker has a "previous bodily disability," the door to second injury fund relief will be thrown wide open and there will be nothing left of it.

¶44 Following *Rothschild*, I would deny second injury fund relief to PSE because there is no evidence that the previous injuries suffered by Lee were more than temporarily disabling.

Review granted at 167 Wn.2d 1009 (2009).