259 P.3d 151 (2011)
171 Wash.2d 866
CROWN, CORK & SEAL, Petitioner
v.
Sylvia SMITH and Department of Labor and Industries, Respondent.
No. 83854-2.
Supreme Court of Washington, En Banc.
Argued February 15, 2011.
Decided June 23, 2011.
*152 Lee Edward Schultz, Attorney at Law, Seattle, WA, Kenneth Wendell Masters, Masters Law Group PLLC, Bainbridge Island, WA, for Petitioner.
Kathryn Carman Comfort, Attorney at Law, Tacoma, WA, Natalee Ruth Fillinger, WA St. Attorney General's Office, Olympia, WA, Anastasia R. Sandstrom, Attorney General's Office, Seattle, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case asks the court to determine what constitutes a "previous bodily disability" entitling an employer to second injury fund coverage under RCW 51.16.120(1) of the Industrial Insurance Act. Division Two of the Court of Appeals held that Crown, Cork & Seal (Crown) was not entitled to second injury fund coverage because any injury to the employee did not substantially impact the employee's daily functioning and efficiency. We affirm.

FACTS
¶ 2 In 1980, Sylvia Smith began employment with Crown, a manufacturer of beer and soda cans. Smith worked as a bagger, a job requiring her to push a string of beer and soda can tops into a bag, physically remove the bag from a mandrel, then fold the bag *153 and stack it on a pallet. Smith performed this sequence three times a minute during 12-hour shifts. Certified Appeal Board Record (CABR) Perpetuation Dep. Upon Oral Examination of Douglas M. Gorker (Mar. 20, 2006) at 5-7.
¶ 3 The evidence Crown submitted indicates that, in January 1994, Smith experienced pain in her left wrist and swelling in both arms. Smith sought emergency room treatment. The attending physician diagnosed Smith with tendosynovitis[1] and provided her with wrist splints to wear while working or when sleeping. Later that month, Smith consulted an osteopath, who instructed her to wear wrist splints while working, but placed no substantial restrictions on her work. One month later, during a follow up appointment, another physician noted that Smith's wrist had gotten "significantly better" and showed no swelling or tenderness. Smith was not diagnosed with carpal tunnel syndrome during either of these examinations. CABR Dep. Upon Oral Examination of Sean Atteridge, DO (Apr. 11, 2006) at 30-31.
¶ 4 In January 1997, after 17 years of uninterrupted employment with Crown, Smith sustained an industrial injury at work when a forklift ran over and fractured her right leg. Prior to her industrial injury, the record indicates that Smith's wrist pain caused difficulty with some daily activities, including cutting vegetables, mowing her lawn, and performing other household chores. However, Smith did not seek any active medical treatment for her wrist pain between 1994 and the time of her industrial injury in 1997. CABR Test. of Sylvia Smith (Apr. 14, 2006) at 32, 34, 44; CABR Dep. Upon Oral Examination of Barbara Berndt, M.ED, CRC, CCM (May 5, 2006) at 16.
¶ 5 Following the forklift accident, Smith received numerous medical and physical evaluations. In 1997, Smith received two physical evaluationsone noted that Smith had normal upper body extremity functions and the other noted no medical difficulties other than her leg trauma. In 1998, a physical capacities report indicated that Smith had carpal tunnel complaints, but this report was based on Smith's description of her medical condition and was not a medical diagnosis. In 2000, another medical evaluation indicated the symptoms of carpal tunnel. CABR Dep. of Berndt (May 5, 2006) at 21-22, 26; CABR Test. of Erin McPhee (Apr. 14, 2006) at 28.
¶ 6 Also during this time, in 1998, a certified rehabilitation counselor conferred with Smith to determine whether Smith was eligible for vocational retraining. The rehabilitation counselor decided that Smith was unable to perform her prior duties at Crown, and Smith was placed in a retraining program for office helpers. Due to her continuing complaints of hand pain, Smith did not complete the vocational retraining program. CABR Test. of McPhee (Apr. 14, 2006) at 5, 11.
¶ 7 In 2005, the Department of Labor & Industries (L & I) determined that Smith's industrial leg injury left her permanently and totally disabled. L & I ordered Crown, a self-insured employer, to place Smith on the pension rolls. L & I also issued an order denying Crown second injury fund coverage.
¶ 8 Crown appealed L & I's order to the Board of Industrial Insurance Appeals (BIIA). The BIIA found that "[n]one of Ms. Smith's pre-existing physical and/or mental conditions constituted a `previous bodily disability'" and affirmed L & I's order. In re Smith, No. 05 14864, at 11 (Wash. Bd. of Indus. Ins. Appeals July 17, 2006). On Crown's appeal, the superior court reversed the BIIA. Examining the factual record developed by the BIIA, the superior court concluded that Smith's carpal tunnel conditions preexisted her industrial injury and did constitute a "previous bodily disability."
¶ 9 On L & I's appeal, Division Two of the Court of Appeals reversed the superior court. The Court of Appeals held that a "previous bodily disability" is a disability that evidences a loss of daily functioning and efficiency and may be shown despite the employee's ability to perform her workplace functions. According to the Court of Appeals, *154 Smith's difficulty with household chores and the presence of pain were insufficient to constitute a "previous bodily disability."

ISSUE
Whether Smith suffered a "previous bodily injury" under RCW 51.16.120(1), thereby entitling Crown to second injury fund coverage.

ANALYSIS
¶ 10 The question before us is, under the statute, what constitutes a "previous bodily disability" for second injury fund coverage. We review questions of law de novo. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001) (citing Stuckey v. Dep't of Labor & Indus., 129 Wash.2d 289, 295, 916 P.2d 399 (1996)).
¶ 11 The second injury fund is a component of the state workers' compensation system and is used to partially relieve an employer's costs related to an injured worker's pension. Employer access to the fund is governed by RCW 51.16.120(1).[2] The statute applies when an employee with a "previous bodily disability" suffers a subsequent work-related industrial injury and the combined effect of both the previous disability and the subsequent industrial injury results in total and permanent disability. The statute provides that the employer pays only the accident cost attributable to the latter industrial injury; the second injury fund covers the remainder.
¶ 12 The second injury fund serves several underlying purposes. First, the fund encourages employers to hire and retain previously disabled workers, providing that the employer hiring the disabled worker will not be liable for a greater disability than what actually results from a later accident. Second, by recognizing that an employer is only required to bear the costs associated with the industrial injuries sustained by its employees, the fund encourages workplace safety and prevents placing unfair financial burdens on employers. Jussila v. Dep't of Labor & Indus., 59 Wash.2d 772, 778-79, 370 P.2d 582 (1962). Since no evidence or argument is made in this case that Smith had any injury before beginning her employment with Crown, our focus is on the latter statutory purpose.
¶ 13 RCW 51.16.120(1) provides three prerequisites that an employer must meet to merit second injury fund coverage. The employer must show that its employee had a "previous bodily disability from any previous injury or disease, whether known or unknown to the employer." RCW 51.16.120(1). The employee must then sustain an industrial injury. Last, the employee must "`become totally and permanently disabled'" as a proximate result of the "`combined effects'" of the two. Seattle Sch. Dist. No. 1 v. Dep't of Labor & Indus., 116 Wash.2d 352, 357, 804 P.2d 621 (1991) (quoting RCW 51.16.120(1)).
¶ 14 In this case, neither party disputes that Crown's employee, Smith, is now totally and permanently disabled, nor that Smith's total disability resulted from the combined effects of Smith's carpal tunnel symptoms and her industrial forklift injury. Therefore, the sole issue before us is whether Smith's prior wrist conditions constituted sufficient evidence of a "previous bodily disability" at the time she suffered her industrial injury in 1997.
¶ 15 Crown argues that a "previous bodily disability" exists when an employee's vocational *155 options are limited by a preexisting condition.[3] More specifically, Crown contends that a "previous bodily disability" may be shown when the preexisting disability impacts an employee's daily activities enough to limit vocational opportunities. Crown asserts that second injury fund coverage should be denied only when the preexisting condition is latent or rarely interferes with an employee's ordinary pursuits of life.
¶ 16 The Court of Appeals' holding articulates a similar interpretation of "previous bodily disability." Reviewing the case law, the court determined that a "previous bodily disability" may be shown by looking to the employee's functioning both inside and outside the workplace:
In some cases, individuals will suffer a loss of "daily functioning and efficiency" and have a loss in potential "earning power" but still be able to do their job at their current place of employment.
Crown Cork & Seal Co. v. Smith, noted at 151 Wash.App. 1030, 2009 WL 2233108, at *4. Applying this standard, the Court of Appeals denied Crown second injury fund coverage by concluding that Smith's daily functioning and efficiency, at the time of her industrial injury, were insufficiently impacted to be a "`previous bodily disability.'" Crown, 2009 WL 2233108, at *4.
¶ 17 L & I agrees with the Court of Appeals' conclusion that Smith's wrist problems did not constitute a "previous bodily disability" but argues that the court's decision applies a legal standard that is too permissive. L & I contends that RCW 51.16.120(1) contemplates a narrowly focused test requiring that the employee's previous disability substantially affect that employee's ability to do her current job. Put another way, L & I argues that a "previous bodily disability" must be evident by solely looking to whether the disability substantially impacted the employee's work performance.
¶ 18 While L & I's position roughly accords with some BIIA cases, we find that the legal standard of "previous bodily disability" that emerges from our existing case law is more nuanced than L & I suggests.
¶ 19 The Industrial Insurance Act, Title 51 RCW, does not provide a definition for the term "disability." However, in the context of occupational disease, this court has defined "disability" to mean
the impairment of the workman's mental or physical efficiency. It embraces any loss of physical or mental functions which detracts from the former efficiency of the individual in the ordinary pursuits of life. It connotes a loss of earning power.
Henson v. Dep't of Labor & Indus., 15 Wash.2d 384, 391, 130 P.2d 885 (1942) (citing 2 William Richard Schneider, The Law of Workmen's Compensation Rules of Procedures and Commutation Tables § 400, at 1332 (2d ed. 1932)). This standard has been used to define "previous bodily disability" for second injury fund cases, both in the appellate courts and in BIIA decisions. Later appellate court decisions further developed this standard by indicating that the preexisting disability cannot be "latent, or quiescent, and not disabling" and merely be "`lighted up'" by the second injury. Donald W. Lyle, Inc. v. Dep't of Labor & Indus., 66 Wash.2d 745, 746, 405 P.2d 251 (1965); Rothschild *156 Int'l Stevedoring Co. v. Dep't of Labor & Indus., 3 Wash.App. 967, 478 P.2d 759 (1970).
¶ 20 Additionally, numerous BIIA decisions have addressed the issue of second injury fund coverage when an employer asserts its employee had a "previous bodily disability." While these BIIA decisions are highly fact-specific, they are generally in accord with our appellate decisions and start from the premise that a "`previous bodily disability'" must be "[s]omething more than the existence of prior conditions requiring periodic medical attention." See, e.g., In re Pate, No. 90 4055, 1992 WL 160673, at *2 (Wash. Bd. of Indus. Ins. Appeals May 7, 1992).[4]
¶ 21 These rules are widely cited and shape the inquiry into what constitutes a "previous bodily disability;" however these rules are so general that they do little to establish a finer measure of what is included in the term. Looking closer at the underlying purpose and amendments to RCW 51.16.120, and to our appellate court and BIIA decisions, we hold that a "previous bodily disability" is an objectively injured staterather than a transitory condition that either effectively impacts an employee's performance in the workplace or materially diminishes the employee's functional ability to perform the essential activities associated with daily living.
¶ 22 The purpose of the second injury fund establishes the parameters of what constitutes a "previous bodily disability." The second injury fund promotes fairness in distributing the costs of industrial accidents and improves safety by ensuring that each employer's cost burden is equal to just those injuries caused in the employer's workplace. Jussila, 59 Wash.2d at 778-79, 370 P.2d 582. Our case law was developed with this purpose in mind and bears out the principle that temporary conditions are insufficient to constitute a previous bodily disability; rather the employer must demonstrate that its employee had an actual, chronic disability. Lyle, 66 Wash.2d at 748, 405 P.2d 251 (holding that the purpose of the second injury fund statute contemplates a "preexisting disabling injury"); e.g., In re Pate, No. 90 4055, at *2.
¶ 23 In light of these cases and the underlying purpose of the second injury fund, it is also evident that the second injury fund was not established to permit employers to avoid paying an employee's full pension when the employer bears responsibility for the employee's injured state. In other words, an employer cannot demand its employee perform a strenuous job then seek relief when that job strains the employee's stamina. Instead, a "previous bodily disability" must be an objectively disabling injury rather than the result of a transitory condition, such as the normal age-related degeneration of the body's function or fatigue due to strenuous physical exertion in the workplace. Rothschild, 3 Wash.App. at 968, 478 P.2d 759 (coverage denied when industrial injury "`triggered'" a "`traumatic neurosis'" aggravated by employee's advancing age, general frailty, and overall physical condition); Lyle, 66 Wash.2d at 746, 405 P.2d 251 (coverage denied for degenerative arthritis that was "latent, or quiescent" at time of further injury).
¶ 24 This reasoning is supported by legislative amendments to RCW 51.16.120(1). The statute formerly allowed second injury fund coverage for a "previous bodily infirmity or disability," but the legislature amended the statute to remove "infirmity or," thereby narrowing the applicable scope of the statute. Former RCW 51.16.120(1) (Laws of 1977, 1st Ex. Sess., ch. 323, § 13). By removing "infirmity" from the statute, the legislature eliminated temporary conditions and naturally occurring frailties or fatigue from second injury fund protection but retained actual, chronic "disabilities" that affect an employee's work performance. This reasoning is supported by the outcomes in numerous BIIA decisions. In re Funk, No. 89 4156, at 2 (Wash. Bd. of Indus. Ins. Appeals Feb. 4, 1991) (coverage denied when logger performed "apparently without limitation"); In *157 re Anderson, No. 88 4251, 1990 WL 310624, at *4 (Wash. Bd. of Indus. Ins. Appeals June 15, 1990) (coverage denied when employee "was able to regularly perform his duties" for nearly 36 years without major interruption).
¶ 25 But RCW 51.16.120(1) does not limit second injury fund coverage to those employers able to show a "previous bodily disability" by evidence of an employee's workplace impairment. The statute also affords second injury fund coverage when an employee's previous disability materially diminishes his or her functional ability to perform the routine activities of daily living. Put another way, an employer may still show an employee's "previous bodily disability," despite the absence of workplace impairment, if the employee's disability has a significant impact on the essential activities of day-to-day life. This situation is most likely to occur where the employee suffers a disabling injury independent of employment, which has no apparent affect on job performance but, when combined with an industrial injury, results in permanent and total disability. This is also evident from legislative amendments to RCW 51.16.120(1).
¶ 26 In its last substantive amendment,[5] the legislature inserted the phrase "whether known or unknown" into the statute to eliminate any requirement that an employer have knowledge of its employee's "previous bodily disability." RCW 51.16.120(1), amended by Laws of 1984, ch. 63, § 1. Following this amendment, any interpretation of RCW 51.16.120(1) that requires an employer to show that its employee suffered a "previous bodily disability" resulting in workplace impairment makes little sense when the statute removes the requirement of an employer's knowledge of its employee's disability. Several appellate court and BIIA decisions support finding a "previous bodily disability" without requiring the employer to show workplace impairment. See, e.g., Puget Sound Energy, Inc. v. Lee, 149 Wash.App. 866, 888-89, 205 P.3d 979 (2009) ("While a `previous bodily disability' must have a substantial negative impact on the worker's physical or mental functioning, it does not follow that is must have a substantial negative impact on the worker's ability to perform his or her current job."); In re Powell, No. 97 6424, 1999 WL 756228, at *5 (Wash. Bd. of Indus. Ins. Appeals July 21, 1999) (insulin-dependent diabetes constituted a previous bodily disability despite a record "devoid" of information regarding whether the diabetes impacted employee's work).
¶ 27 In sum, the employer seeking second injury fund coverage under RCW 51.16.120(1) bears the burden of establishing that its employee had a "previous bodily disability." To show a "previous bodily disability" the employer must produce evidence that the employer either hired or retained the employee in an objectively injured state; transitory conditions arising from natural age-related degeneration or fatigue due to exertion in the workplace are insufficient. However, the evidence to meet this burden is not limited to evidence showing that the disability effectively impaired the employee's ability to perform his or her work duties. While it stands to reason that the clearest cases will be based on evidence showing that the employee suffered an objective injury impairing his or her ability to perform occupational duties, a previous bodily disability may be disabling without the employee exhibiting outward signs of workplace impairment if the preexisting disability materially diminished the employee's ability to perform the activities of daily living and combined with an industrial injury caused permanent and total disability.
¶ 28 The only question remaining is whether Crown has satisfied its burden and is entitled to second injury fund coverage for Smith's injuries. We find that the evidence in this case is insufficient to merit second injury fund relief. As mentioned, Crown has the burden to show that, at the time of her 1997 industrial injury, Smith's preexisting wrist issues either effectively impacted workplace *158 performance or materially diminished her ability to perform the activities of daily living. Crown fails to carry its burden.
¶ 29 In this case, the evidence shows that Smith fully performed her workplace functions as a bagger, except for a brief period in 1994 when she experienced wrist pain and sought medical treatment. But this brief period alone is insufficient to show a "previous bodily disability" because Crown does not establish that Smith's wrist complaints were caused by something more than the normal wear and tear of performing a physically demanding job. To the contrary, Smith's carpal tunnel condition was evidently work-related and caused by the strenuous, repetitious work that Smith performed for Crown.
¶ 30 Crown is also unable to show that Smith's condition materially detracted from her daily life. Smith testified that, after working her weekly shift, she experienced some difficulty in the ordinary pursuits of life, namely performing household chores. However, this testimony does not show that Smith was unable to substantially perform these tasks or that Smith was unable to procure other employment at the time of her industrial injury because of her wrist pain. A previously injured employee who retains the ability to perform all ordinary life activitiesincluding but not limited to work activitiesdoes not have a "previous bodily disability." Crown has not established that Smith suffered from a "previous bodily disability" at the time of the industrial injury to her leg.

CONCLUSION
¶ 31 As used in RCW 51.16.120(1), a "previous bodily disability" is an objectively injured state that either effectively impacts an employee's performance in the workplace or materially diminishes the employee's functional ability to perform the routine activities associated with daily living. We affirm the Court of Appeals.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M.
JOHNSON, and DEBRA L. STEPHENS, Justices and STEPHEN J. DWYER, Justice Pro Tern.
NOTES
[1] "[T]endosynovitis" is the inflammation of a tendon and its enveloping sheath. Stedman's Medical Dictionary 1795 (27th ed. 2000).
[2] RCW 51.16.120(1), in relevant part, states:

Whenever a worker has a previous bodily disability from any previous injury or disease, whether known or unknown to the employer, and shall suffer a further disability from injury or occupational disease in employment covered by this title and become totally and permanently disabled from the combined effects thereof or die when death was substantially accelerated by the combined effects thereof, then the experience record of an employer insured with the state fund at the time of the further injury or disease shall be charged and a self-insured employer shall pay directly into the reserve fund only the accident cost which would have resulted solely from the further injury or disease, had there been no preexisting disability, and which accident cost shall be based upon an evaluation of the disability by medical experts. The difference between the charge thus assessed to such employer at the time of the further injury or disease and the total cost of the pension reserve shall be assessed against the second injury fund.
[3] In its petition for review, Crown argues that the Court of Appeals erred by improperly substituting its own factual findings for those of the superior court. Crown relies principally on Ruse v. Department of Labor & Industries, 138 Wash.2d 1, 5, 977 P.2d 570 (1999) (quoting Young v. Department of Labor & Industries, 81 Wash.App. 123, 128, 913 P.2d 402 (1996)) ("review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings").

However, Crown's argument misconstrues the Court of Appeals' decision. Before reviewing whether substantial evidence supported the superior court's findings, the Court of Appeals first turned to the question of whether the trial court properly construed RCW 51.16.120(1). Since the Court of Appeals determined that the superior court applied an incorrect legal standard for "previous bodily disability," the Court of Appeals held that, as a matter of law, the findings did not support showing that Smith had a previous bodily disability. Crown Cork & Seal Co., v. Smith, noted at 151 Wash.App. 1030, 2009 WL 2233108, at *3. Since the Court of Appeals did not make its own factual findings, but rather applied the existing findings to a different legal standard, we reject this argument.
[4] BIIA decisions are not binding on this court, but can provide instructive guidance. Jensen v. Dep't of Ecology, 102 Wash.2d 109, 113, 685 P.2d 1068 (1984) (appellate courts give substantial weight to an administrative agency's interpretation of the law).
[5] RCW 51.16.120 was further amended in both 2004 and 2010. The 2004 amendment added a subsection to the statute that is irrelevant to determining the scope of "previous bodily disability." The 2010 amendment made nonsubstantive changes to two subsections of the statute. See RCW 51.16.120, amended by Laws of 2004, ch. 258, § 1; and Laws of 2010, ch. 213, § 1.