# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE BOEING COMPANY, | ) | NO. 69759-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| PATRICIA DOSS, | ) | |
| | ) | |
| Respondent, | ) | FILED: March 31, 2014 |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF LABOR & | ) | |
| INDUSTRIES, | ) | |
| | ) | |
| Appellant. | ) | |

LEACH, C.J. — The Department of Labor and Industries (Department) appeals a superior court judgment ordering the Department to pay from the second injury fund the costs of Patricia Doss's ongoing postpension medical treatment. The Department claims that the Boeing Company, as a self-insured employer, must pay these costs because Doss is permanently and totally disabled due to the combined effects of her preexisting disabling condition and chemical exposure at Boeing. Because the unambiguous language of RCW 51.16.120(1), consistent with the second injury fund's purpose, requires the Department to pay these costs, we affirm.

FACTS

In March 2000, Doss filed an application for workers' compensation benefits with the Department, alleging that chemical exposure while employed at Boeing permanently aggravated her preexisting symptomatic asthma. On June 17, 2008, the Department determined that Doss was permanently and totally disabled as of May 14, 2008, as a result of the combined effects of her industrial exposure and her preexisting condition. The Department awarded her a pension and also authorized ongoing postpension medical treatment for her asthma.[1]

The Department granted second injury fund relief to Boeing but also authorized ongoing medical treatment for Doss's asthma. On July 27, 2010, the Department, by letter, directed Boeing to pay the entire cost of this treatment. Boeing appealed this letter to the Board of Industrial Insurance Appeals (Board), which affirmed the Department. Boeing next appealed to the superior court.

The superior court reversed the Board's decision, concluding, "Ms. Doss' post pension treatment benefits are properly payable from the Second Injury Fund, and are not the responsibility of Boeing." The Department appeals.

---

[1] The Department ordered ongoing medical treatment with prescription medications under former RCW 51.36.010 (2007).

## STANDARD OF REVIEW

When the Board reviews a case on stipulated facts, any remaining issues present questions of law, which we review de novo.[2]

## ANALYSIS

This case presents a single issue: should the cost of Doss's postpension medical care be paid by Boeing or by the Department from the second injury fund. The Department claims, "[T]he superior court erred because it ordered the Department to pay for the costs of a self-insured employee's post-pension medical treatment with funds that are not collected for or devoted to such a purpose." Boeing responds, "Both the language of the Second Injury Fund statute and the Department's own self-promulgated regulations show that Employers, when Second Injury Fund relief has been granted, are only responsible for the accident costs that resulted solely from the Claimants' industrial injury or disease." We agree with Boeing.

In Washington, every employer must secure the payment of workers' compensation by either "'[i]nsuring and keeping insured the payment of such benefits with the state fund'" or by qualifying as a self-insurer under chapter 51.14 RCW.[3] If an employer maintains industrial insurance through the state, the

___

[2] Tobin v. Dep't of Labor & Indus., 145 Wn. App. 607, 613, 187 P.3d 780 (2008) (citing Tunstall v. Bergeson, 141 Wn.2d 201, 209-10, 5 P.3d 691 (2000)).
[3] Johnson v. Tradewell Stores, Inc., 95 Wn.2d 739, 742, 630 P.2d 441 (1981) (quoting RCW 51.14.010).

Department collects premiums from the employer to support medical aid and accident funds.[4] Injured workers receive medical benefits through the medical aid fund.[5] The accident fund provides benefits to workers who suffer injuries on the job or to the worker's family or dependents if the worker dies.[6] Self-insured employers pay benefits to injured workers directly.[7]

"Compensation for permanent total disability is paid as a monthly pension (or a lump sum) based on a percentage of the worker's wages."[8] RCW 51.44.070(1) requires,

> For every case resulting in death or permanent total disability the department shall transfer on its books from the accident fund of the proper class and/or appropriate account to the "reserve fund" a sum of money for that case equal to the estimated present cash value of the monthly payments provided for it, to be calculated upon the basis of an annuity covering the payments in this title provided to be made for the case. Such annuity values shall be based upon rates of mortality, disability, remarriage, and interest as determined by the department, taking into account the experience of the reserve fund in such respects.
>
> Similarly, a self-insurer in these circumstances shall pay into the reserve fund a sum of money computed in the same manner, and the disbursements therefrom shall be made as in other cases.[9]

---

[4] WR Enters., Inc. v. Dep't of Labor & Indus., 147 Wn.2d 213, 216-17, 53 P.3d 504 (2002).

[5] WR Enters., 147 Wn.2d at 217 (citing former RCW 51.04.030 (1998)).

[6] WR Enters., 147 Wn.2d at 216-17 (citing ch. 51.32 RCW).

[7] Johnson, 95 Wn.2d at 742.

[8] McIndoe v. Dep't of Labor & Indus., 144 Wn.2d 252, 257, 26 P.3d 903 (2001) (citing former RCW 51.32.060 (1993)).

[9] Alternatively, a self-insured employer may file a bond or an assignment of an account or may purchase an annuity to cover the costs of the required pension benefits. RCW 51.44.070(2); see also RCW 51.44.140.

RCW 51.36.010(4) allows the supervisor of industrial insurance to authorize medical benefits for a pensioned worker "when such medical and surgical treatment is deemed necessary by the supervisor of industrial insurance to protect such worker's life or provide for the administration of medical and therapeutic measures including payment of prescription medications." Here, the Department awarded Doss postpension medical treatment for her asthma.

Washington's workers' compensation system includes a special fund called the "second injury fund." This "fund encourages employers to hire and retain previously disabled workers, providing that the employer hiring the disabled worker will not be liable for a greater disability than what actually results from a later accident."[10] Additionally, "by recognizing that an employer is required only to bear the costs associated with the industrial injuries sustained by its employees, the fund encourages workplace safety and prevents placing unfair financial burdens on employers."[11] A rule that makes it easier for an employer to recover from the second injury fund will support the fund's purpose, while a rule that makes recovery too difficult will discourage an employer from hiring a previously disabled worker.[12]

---

[10] Crown, Cork & Seal v. Smith, 171 Wn.2d 866, 873, 259 P.3d 151 (2011).

[11] Crown, Cork & Seal, 171 Wn.2d at 873 (citing Jussila v. Dep't of Labor & Indus., 59 Wn.2d 772, 778-79, 370 P.2d 582 (1962)).

[12] Puget Sound Energy, Inc. v. Lee, 149 Wn. App. 866, 880, 205 P.3d 979 (2009) (citing Jussila, 59 Wn.2d at 779).

RCW 51.44.040(1) provides that the second injury fund "shall be used only for the purpose of defraying charges against it as provided in RCW 51.16.120 [distribution of further accident cost] and 51.32.250 [job modification], as now or hereafter amended."[13] RCW 51.16.120(1) states,

> Whenever a worker has a previous bodily disability from any previous injury or disease, whether known or unknown to the employer, and shall suffer a further disability from injury or occupational disease in employment covered by this title and become totally and permanently disabled from the combined effects thereof . . . a self-insured employer shall pay directly into the reserve fund only the accident cost which would have resulted solely from the further injury or disease, had there been no preexisting disability, and which accident cost shall be based upon an evaluation of the disability by medical experts. The difference between the charge thus assessed to such employer at the time of the further injury or disease and the total cost of the pension reserve shall be assessed against the second injury fund.

The Department asks us to follow a Board decision, In re Boudon,[14] where the Board directed Boeing to pay for the claimant's postpension medical treatment when the Department granted second injury fund relief. The Board reasoned,

> The provision of medical benefits after a pension award is discretionary to the director. It is not an anticipated cost that is built into the pension reserve. To pay the cost of the ongoing benefits from the pension reserve would deplete the funds placed in the reserve to cover the cost of the pension over the life of the worker. If the employer were a state fund employer, the Department would pay the cost of the ongoing medical benefits from the medical aid fund, not the supplemental pension reserve fund. The self-insured

---

[13] This case does not involve RCW 51.32.250.
[14] Nos. 98 17459 & 99 22359, 2000 WL 245825, at *5 (Wash. Bd. of Indus. Ins. Appeals Jan. 26, 2000).

employer stands in the shoes of the Department with respect to payment of medical benefits and must likewise pay the cost of Ms. Boudon's ongoing psychiatric care.[15]

Boeing notes that it appealed this decision to the superior court, which reversed the Board and ordered the benefits paid from the second injury fund.[16]

We interpret a statute to give effect to the legislature's intent. Accordingly, we begin our review with the statute's plain language.[17] When a statute is unambiguous, we determine legislative intent from the statutory language alone.[18] Where an agency charged with administering and enforcing an ambiguous statute has interpreted it, we accord great weight to the agency's interpretation to determine legislative intent.[19] Absent ambiguity, however, we do not need the agency's expertise to construe the statute.[20] Additionally, we will not defer to an agency determination that conflicts with the statute.[21] "The courts retain the ultimate authority to interpret a statute."[22]

---

[15] Boudon, 2000 WL 245825, at *5.

[16] Dep't of Labor & Indus. v. Boeing Co., No. 00-2-05612-5-KNT (King County Super. Ct., Wash. Dec. 15, 2012).

[17] Tiger Oil Corp. v. Dep't of Labor & Indus., 88 Wn. App. 925, 930, 946 P.2d 1235 (1997) (citing Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wn.2d 40, 53, 905 P.2d 338 (1995)).

[18] Tiger Oil, 88 Wn. App. at 930 (citing Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); In re Eaton, 110 Wn.2d 892, 898, 757 P.2d 961 (1988)).

[19] Tiger Oil, 88 Wn. App. at 931 (citing City of Pasco v. Pub. Emp't Relations Comm'n, 119 Wn.2d 504, 507, 833 P.2d 381 (1992)).

[20] Tiger Oil, 88 Wn. App. at 931 (citing Pasco, 119 Wn.2d at 507).

[21] Tiger Oil, 88 Wn. App. at 931 (citing Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 815, 828 P.2d 549 (1992)).

[22] Tiger Oil, 88 Wn. App. at 930 (citing Franklin County Sheriff's Office v. Sellers, 97 Wn.2d 317, 325-26, 646 P.2d 113 (1982)).

The plain language of RCW 51.16.120(1) requires a self-insured employer to pay "only the accident cost which would have resulted solely from the further injury or disease, had there been no preexisting disability." The second injury fund pays "[t]he difference between the charge thus assessed to such employer at the time of the further injury or disease and the total cost of the pension reserve."[23] Thus, the statute requires Boeing to pay only the costs necessitated solely by Doss's industrial exposure and no more. The Department makes no claim that Doss's need for postpension medical care resulted solely from chemical exposure at Boeing. Thus, Boeing cannot be required to pay for this care.

Because the statutory language is unambiguous, we will not defer to the agency's interpretation in Boudon, which conflicts with the statute. Requiring Boeing to pay the cost of Doss's postpension medical treatment would also conflict with the second injury fund's purpose—to contain the future workers' compensation costs for employers who hire workers with preexisting disabling conditions to make those costs comparable to those for workers without preexisting disabling conditions. A contrary result would provide an economic disincentive to hiring previously disabled workers.

---

[23] RCW 51.16.120(1).

Boeing also asserts that requiring it to pay Doss's postpension medical treatment costs would constitute a double assessment on Boeing and a windfall to the Department. RCW 51.44.040(3) imposed on self-insured employers assessments for the second injury fund "pursuant to rules and regulations promulgated by the director to ensure that self-insurers shall pay to such fund in the proportion that the payments made from such fund on account of claims made against self-insurers bears to the total sum of payments from such fund." WAC 296-15-221(4)(a) requires each self-insured employer to submit to the Department

> [c]omplete and accurate quarterly reports summarizing worker hours and claim costs paid the previous quarter. . . . This report is the basis for determining the administrative, second injury fund, supplemental pension, asbestosis and insolvency trust assessments. . . .
> . . . .
> (ii) Claim costs include, but are not limited to:
> (A) Time loss compensation. Include the amount of time loss the worker would have been entitled to if kept on full salary.
> (B) Permanent partial disability (PPD) awards.
> (C) Medical bills.
> (D) Prescriptions.
> (E) Medical appliances.
> (F) Independent medical examinations and/or consultations.
> (G) Loss of earning power.
> (H) Travel expenses for treatment or rehabilitation.
> (I) Vocational rehabilitation expenses.
> (J) Penalties paid to injured workers.
> (K) Interest on board orders.

The Department bases a self-insured employer's assessments for the second injury fund upon the employer's total claim costs. Thus, we agree with

Boeing that it pays assessments for the second injury fund based, in part, on treatment costs. Including treatment costs as part of the total claim costs considered for the self-insured employer's assessments indicates that the legislature intended for the Department to pay from the second injury fund the costs of postpension medical treatment after it grants second injury fund relief.

All self-insured employers pay for second injury fund claims that involve individual self-insured employers. This spreads the risk among all of these self-insured employers. This does not affect assessments imposed on employers who insure the payment of workers' compensation benefits with the state fund.

Further, as the Department notes, when the Department orders postpension treatment in a second injury state fund claim, the cost of this treatment "is spread to all state fund employers and employees." The state fund employer pays for actual and anticipated costs for permitted claims, including pensions. The state fund employer's experience rating is based upon these costs.

When a state fund employer's injured worker becomes totally disabled because of the combined effects of a preexisting disabling condition and an industrially related condition, the state fund employer is entitled to have the pension paid from the second injury fund without any charges to the employer's account and without any effect on the employer's experience rating. The

Department's proposed result would impose a greater financial burden on self-insured employers. "We do not interpret statutes to reach absurd and fundamentally unjust results."[24] Therefore, because the Department has presented no authority to support disparate financial treatment of self-insured employers, we reject its proposed statutory interpretation.

## CONCLUSION

Because the unambiguous language of RCW 51.16.120(1), consistent with the purpose of the second injury fund, requires the Department, rather than the self-insured employer, to pay the costs of a disabled employee's ongoing postpension medical treatment and a self-insured employer should not bear a financial burden different from a state fund employer, we affirm.

Leach, C. J.

WE CONCUR:

---

[24] Flanigan v. Dep't of Labor & Indus., 123 Wn.2d 418, 426, 869 P.2d 14 (1994).