IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

JAMES MCCHESNEY,

                Appellant,

    v.

DEPARTMENT OF LABOR
AND INDUSTRIES OF THE STATE OF
WASHINGTON,

                Respondent.

No. 80121-0-I

DIVISION ONE

UNPUBLISHED OPINION

LEACH, J. — James McChesney was injured while working as a carpenter for Ross Display Fixture Company in 2015. He filed a claim for disability compensation with the Department of Labor and Industries (Department). The Department closed McChesney's claim and awarded him permanent partial disability. McChesney appealed and an industrial appeals judge awarded McChesney an additional 9.5 percent permanent partial disability. The Department filed a petition for review, and the Board of Industrial Insurance Appeals (BIIA) reversed the industrial appeals judge and affirmed the Department. McChesney appealed and the superior court affirmed the BIIA's decision. McChesney appeals the superior court's decision. We affirm.

FACTS

On December 8, 2015, an elevator door crushed James McChesney's right hand while he worked as a carpenter for Ross Display Fixture Company. Dr. Grant Lohse,

Citations and pin cites are based on the Westlaw online version of the cited material.

McChesney's orthopedic surgeon, surgically treated McChesney's hand. He placed pins in McChesney's fifth metacarpal bone, which were removed during a later procedure. McChesney filed a workers' compensation claim with the Department, which accepted the claim.

On October 31, 2016, Dr. Lohse determined McChesney did not need further medical treatment. Based on the loss of motion to McChesney's hand, Dr. Lohse rated his impairment at "5 percent whole person." McChesney complained to Dr. Lohse that his "impairment rating didn't accurately summarize the deficit he felt with the function of his hand."

On November 28, 2016, the Department closed the claim and provided McChesney compensation for permanent partial disability (PPD) for the loss of function of his fingers. The Department valued McChesney's PPD at "the following amputation values at the metacarpophalangeal joint or with resection of the metacarpal bone."

| Finger | Value |
|--------|-------|
| Index Finger | 16% |
| Middle Finger | 11% |
| Ring Finger | 21.5% |
| Little Finger | 33% |

McChesney appealed the Department's award of PPD to the Board of Industrial Insurance Appeals. He asked for additional PPD because "his injury placed him on a spectrum of development of Complex Regional Pain Syndrome (CRPS)."

Dr. Lohse testified that McChesney experienced two symptoms of CRPS: (1) restricted range of motion of his fingers, and (2) pain. Dr. Lohse testified these symptoms put McChesney on the path toward a CRPS diagnosis, but they did not satisfy

2

the American Medical Association's (AMA) diagnosis for CRPS. Because Dr. Lohse did not actually diagnose McChesney with CRPS, he could not factor McChesney's pain into the PPD calculation.

Dr. Patricia David testified to reviewing McChesney's medical records and Dr. Lohse's deposition testimony. Dr. David testified that "Spectrum CRPS" is not a formally recognized diagnosis within the medical community or mentioned in the AMA Guides to the Evaluation of Permanent Impairment or the Department's treatment guidelines. Dr. David also testified that CRPS is not a common diagnosis. Dr. David testified for a CRPS diagnosis, the patient must meet four criteria and McChesney only met one of the four criteria. She testified there was insufficient information to diagnose McChesney with CRPS under the AMA Guides.

On June 12, 2018, an industrial appeals judge (IAJ) decided McChesney was entitled to further compensation for PPD "equal to 9.5 percent as compared to the amputation value of the claimant's right arm, or equal to 10.5 percent of the whole person, less the compensation for permanent partial disability previously paid." The IAJ used the "best fit" analysis. It explained that even though McChesney "did not meet the diagnostic criteria for CRPS as noted by the AMA guides," his symptoms were "consistent with 'spectrum CRPS' which is essentially not the complete diagnosis but an acknowledgement that the claimant's injury has involved a loss of function beyond the loss of range of motion in his hand and fingers. [And, the] rating reflects this additional impairment."

The Department asked the BIIA to review this decision. It argued the IAJ should not extend the "best fit" analysis to a CRPS rating system case without a CRPS diagnosis.

On September 4, 2018, the BIIA issued a Decision and Order affirming the Department's November 28, 2016 order and calculation of PPD. The BIIA disagreed with the IAJ and determined McChesney was not entitled to the additional 9.5 percent PPD because he did not develop CRPS as a result of his industrial injury. Citing to WAC 296-20-19030, the BIIA determined that because pain is not an objective physical or clinical finding, pain is not considered when calculating PPD for work related impairments.

The BIIA's Decision and Order contained a dissent. The dissent determined the IAJ correctly concluded McChesney was entitled to additional PPD caused by CRPS under the "best fit" analysis.

McChesney appealed the BIIA's Decision and Order to the superior court. He asked the superior court to reverse the BIIA's decision and to award him the additional 9.5 percent PPD.

The superior court affirmed the BIIA's decision. It determined McChesney's "symptoms do not rise to the level of a CRPS diagnosis per Department AMA guides." It also determined "CRPS is an inappropriate diagnosis for the use of 'best fit.'" The superior court adopted the BIIA's findings of fact as its own.

McChesney appeals.

ANALYSIS

I.   Standard of Review

Washington's Industrial Insurance Act (IIA) Title 51 RCW provides for judicial review of workers' compensation determinations.[1]   The superior court reviews BIIA decisions de novo.[2]  The superior court considers only the evidence contained in the BIIA record.[3]   The superior court considers the BIIA's findings and decisions prima facie correct.[4]  The party challenging the BIIA's findings and decisions has the burden to prove otherwise by a preponderance of evidence.[5]

We review the record to determine "whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings."[6]  Substantial evidence is enough evidence to persuade a fair-minded, rational person of the truth of the declared premise.[7]  We review the record in the light most favorable to the party that prevailed in superior court.[8]  This court does not reweigh or rebalance the competing testimony and inferences.[9]  The

---

[1] RCW 51.52.110.

[2] Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179-81, 210 P.3d 355 (2009); RCW 51.52.115.

[3] McDonald v. Dep't of Labor & Indus., 104 Wn. App. 617, 619, 17 P.3d 1195 (2001); RCW 51.52.140.

[4] Ruse v. Dep't. of Labor & Indus., 138 Wn. 2d 1, 5, 977 P.2d 570 (1999); RCW 51.52.115.

[5] Ruse, 138 Wn. 2d at 5.

[6] Ruse, 138 Wn. 2d at 5-6 (quoting Young v. Dep't of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996)).

[7] Mowat Const. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009).

[8] Stone v. Dep't of Labor & Indus., 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

[9] Stone, 172 Wn. App. at 260.

ordinary civil standards of review, rules of evidence, and rules of civil procedure govern appeals from superior court decisions in IIA cases.[10]

## II. Permanent Partial Disability

McChesney argues the superior court should have reversed the BIIA's decision. Specifically, McChesney argues Dr. Lohse diagnosed him with "Spectrum CRPS" and that diagnosis "may properly be rated for PPD by analogy using the AMA Guides' system for rating otherwise-undeniable presentations of full-blown CRPS." The Department claims McChesney's "Spectrum CRPS" condition does not satisfy RCW 51.08.150's definition of a PPD, so McChesney is not entitled to more PPD.

The IIA provides "sure and certain relief for workers, injured in their work."[11] The IIA is "liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker."[12]

RCW 51.08.150 provides, " 'Permanent partial disability' means the loss of . . . one hand, . . . one or more fingers, . . . any dislocation where ligaments were severed where repair is not complete, or any other injury known in surgery to be permanent partial disability." WAC 296-20-19000 states,

> Permanent partial disability is any anatomic or functional abnormality or loss after maximum medical improvement (MMI) has been achieved. At MMI, the worker's condition is determined to be stable or nonprogressive at the time the evaluation is made. A permanent partial disability award is a monetary award designed to compensate the worker for the amputation or loss of function of a body part or organ system. Impairment is evaluated

---

[10] RCW 51.52.140.
[11] RCW 51.04.010.
[12] Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 475 P.2d 1295 (1987).

without reference to the nature of the injury or the treatment given. To ensure uniformity, consistency and fairness in rating permanent partial disability, it is essential that injured workers with comparable anatomic abnormalities and functional loss receive comparable disability awards. As such, the amount of the permanent partial disability award is not dependent upon or influenced by the economic impact of the occupational injury or disease on an individual worker. Rather, Washington's Industrial Insurance Act requires that permanent partial disability be established primarily by objective physical or clinical findings establishing a loss of function.

RCW 51.32.080 authorizes PPD "based on a worker's loss of bodily function."[13] RCW 51.32.080(1)(a) describes the PPD amount for injuries resulting in certain amputations. Amputations not specified in RCW 51.32.080(1)(a) are compensated "in proportion to that which such other amputation . . . most closely resembles and approximates."[14]

RCW 51.32.080(3)(a) states, "the department shall give consideration to, but need not necessarily adopt, any nationally recognized medical standards or guides for determining various bodily impairments." To determine PPD for loss of function of extremities, the Department uses the AMA Guides to the Evaluation of Permanent Impairment to determine the percentage of loss of function.[15] Then, the Department compares the percentage of loss of function to the amputation value listed in RCW 51.32.080.[16]

a. Special Consideration

McChesney argues CRPS and "Spectrum CRPS" are different diagnoses. McChesney notes that CRPS is listed under the AMA guidelines with established

---

[13] Boeing Co. v. Doss, 183 Wn. 2d 54, 60, 347 P.3d 1083 (2015).
[14] RCW 51.32.080(2).
[15] WAC 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.
[16] WAC 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.

diagnostic criteria and contends that "Spectrum CRPS" is "known in surgery" under the plain meaning of RCW 51.08.150. He argues the BIIA and superior court should have given special consideration to Dr. Lohse's testimony that "Spectrum CRPS" is "known in surgery" because he was McChesney's attending physician.

In Clark County v. McManus, the Washington Supreme Court determined a trial court must instruct the jury reviewing a BIIA decision to give the testimony of the attending physician special consideration.[17] The special consideration instruction exists because the court recognizes that "[a]n attending physician who has cared for and treated a patient over a period of time 'is better qualified to give an opinion as to the patient's disability than a doctor who has seen and examined the patient once.'"[18] And, this special consideration supports the purpose of the IIA, "which is to promote benefits and to protect workers."[19] But, a judge or jury need not give this special consideration when "specific reasons for not accepting the attending physician's opinion are articulated."[20] The special consideration instruction may not be appropriate if there are "multiple, conflicting attending physicians' testimony."[21]

Drs. Lohse and David testified that "Spectrum CRPS" is not a recognized diagnosis and is not found in the AMA Guidelines. Dr. Lohse testified that McChesney does not

---

[17] 185 Wn.2d 466, 475-76, 372 P.3d 764 (2016).
[18] Ruse, 138 Wn.2d at 6 (quoting Spalding v. Dep't of Labor & Indus., 29 Wn.2d 115, 128-29, 186 P.2d 76 (1947)).
[19] Hamilton v. Dep't of Labor & Indus., 111 Wn.2d 569, 572-73, 761 P.2d 618 (1988).
[20] McManus, 185 Wn.2d at 475-76.
[21] McManus, 185 Wn.2d at 474.

meet the criteria for CRPS or "Spectrum CRPS." Instead, Dr. Lohse testified that McChesney is "on a spectrum of CRPS."

Although Dr. Lohse was McChesney's attending physician, the superior court did not need to provide his testimony special consideration because both Drs. Lohse and David determined McChesney does not have CRPS. So, even if the superior court gave Dr. Lohse's testimony special consideration, it would have arrived at the same conclusion.

b. "Best Fit" Analysis

McChesney argues the superior court should have applied the "best fit" analysis to the PPD findings. The Department argues the superior court correctly rejected the "best fit" analysis.

In Roening, the BIIA considered "whether a worker who has an objectively demonstrable loss of function is entitled to a permanent partial disability award under a 'best fit' analysis, if that impairment is not specifically described in the AMA Guides."[22] It determined that a person may receive a PPD award in some circumstances where the AMA Guides do not specifically address their condition.[23]

Here, the superior court determined "CRPS is an inappropriate diagnose for the use of 'best fit.'" Because the AMA Guides specifically address CRPS, we agree and affirm. Drs. Lohse and David determined McChesney did not meet the diagnostic criteria for CRPS. McChesney offers no persuasive reason to analogize his condition to CRPS

---

[22] In re Roening, Bd. of Indus. Ins. Appeals May 04 22220 (2006).
[23] No. 04 22220 at 4-5.

under this finding. By finding that McChesney did not have CRPS, Drs. Lohse and David determined the "best fit" analysis did not apply.

McChesney tries to distinguish his case from other cases where the BIIA determined a claimant was not entitled to PPD for CRPS. In In re Peterson, the BIIA reversed an IAJ's decision to allow a claim for CRPS because there was insufficient evidence to show the appellant met all of the diagnostic criteria.[24] The BIIA did not apply the "best fit" analysis. In In re Martinez, the BIIA determined the appellant did not meet all of the diagnostic criteria for CRPS, and it did not apply the "best fit" analysis.[25] So, the BIIA does not use the "best fit" analysis when a worker meets some but not all the necessary diagnostic criteria for CRPS.

Reviewing the record in the light most favorable to the Department, substantial evidence supports the superior court's findings and its conclusions of law that flow from those findings. Because Drs. Lohse and David determined McChesney does not meet the criteria for CRPS, the superior court correctly affirmed the BIIA's decision to reverse the IAJ and affirm the Department's finding that McChesney's injury did not cause him to develop CRPS and the Department's award of PPD.

III.  Expert Testimony

McChesney argues the superior court should have excluded Dr. David's disposition testimony under Evidence Rule (ER) 702 or ER 403. Alternatively, McChesney argues the superior court should have given Dr. David's testimony little

---

[24] In re Virginia C. Peterson, Bd. of Indus. Ins. Appeals March 15 21676 (2017).
[25] In re Guillermo Martinez, Bd. of Indus. Ins. Appeals June 14 12018 (2015).

weight.   Because substantial evidence supports the superior court's decision to admit Dr. David's testimony as relevant expert testimony, we affirm.

a. ER 702

McChesney argues the superior court should have excluded Dr. David's testimony under ER 702.  We disagree.

ER 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  In addition to being qualified as an expert by "knowledge, skill, experience, training, or education," to be admissible the expert must rely on "generally accepted theories in the scientific community,"[26] and the testimony must be helpful to understand matters outside the competence of lay people.[27]  "But, the expert testimony of an otherwise qualified witness is not admissible if the issue at hand lies outside the witness' area of expertise."[28]   We review a superior court's evidentiary decisions for abuse of discretion looking to see if the court made a manifestly unreasonable decision or based its decision on untenable grounds.[29]

McChesney asked the IAJ to strike Dr. David's testimony from the record.  The IAJ denied McChesney's request and admitted the testimony because "The doctor was qualified to testify to the various guidelines for CRPS set by the Department and the AMA

---

[26] Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014).
[27] Anderson v. Akzo Noble Coatings, Inc., 172 Wn.2d 593, 600, 260 P.3d 857 (2011).
[28] State v. Farr-Lenzini, 93 Wn. App. 453, 461, 970 P.2d 313 (1999).
[29] Esparza v. Skyreach Equipment, Inc., 103 Wn. App. 916, 924, 15 P.3d 188 (2000).

guides and to opine as to the applicability of those requirements to the claimant based on her review of Dr. Lohse's records."

The superior court also considered Dr. David to be an expert. And, the superior court's opinion includes Dr. David's testimony of the four CRPS diagnosis criteria.

First, McChesney argues the superior court should have excluded Dr. David's testimony because "Spectrum CRPS" is outside Dr. David's expertise. McChesney asserts Dr. David admitted "Spectrum CRPS" was beyond her expertise. During Dr. David's deposition McChesney's attorney asked, "do you hold yourself out to be an expert in CRPS?" and Dr. David testified, "No." But, Dr. David also testified to participating in continuing medical education classes in this area, having diagnosed patients with CRPS, knowing the symptoms and criteria to make a CRPS diagnosis, and to knowing and using the AMA Guides. Because Dr. David testified to having the knowledge, skill, and experience to apply the relevant diagnostic criteria, substantial evidence supports the superior court's determination that she was an expert.

Second, McChesney argues the superior court should have excluded Dr. David's testimony because she is not a surgeon. But, she was being asked to evaluate the residual impairment following an orthopedic surgery. Dr. David is a board-certified occupational medicine physician. Dr. David is qualified to be an expert witness. Dr. David testified to treating patients who received orthopedic surgery and testified that the facts and data Dr. Lohse used to make his diagnosis are typical of what she uses to make diagnoses. So, Dr. David testified about sufficient education, training, experience and knowledge to qualify as an expert. Substantial evidence supports the superior court's

12

determination that Dr. David could provide expert testimony about McChesney's diagnosis and impairment.

Third, McChesney argues the superior court should have excluded Dr. David's testimony because it contradicts RCW 51.08.150's "injury known in surgery" requirement for PPD. Because both Drs. Lohse and David agreed, "Spectrum CRPS" is not a recognized diagnosis, it is not an injury known in surgery. This claim lacks merit.

Fourth, McChesney argues the superior court should have excluded Dr. David's testimony because it was "inconsequential in comparison to that of Dr. Lohse's testimony." Dr. David articulated the criteria for a CRPS diagnosis and testified that she agreed with the facts and data Dr. Lohse relied on. Because Dr. David provided the criteria for a CRPS diagnosis and confirmed the information relied on by Dr. Lohse, her testimony was not inconsequential in comparison.

Fifth, McChesney argues the superior court should have excluded Dr. David's testimony because she did not examine, speak with McChesney, or review his testimony. Medical experts commonly review patient medical records and rely on those records as a factual basis for their testimony.[30] McChesney cites no authority disallowing this common practice. Dr. David reviewed McChesney's medical records and Dr. Lohse's testimony. So, this claim is without merit.

---

[30] L.M. by and through Dussault v. Hamilton, 200 Wn. App. 535, 552-53, 304 P.3d 870 (2017).

13

Because substantial evidence supports the superior court's finding that Dr. David is an expert in the areas where she provided testimony, and that finding supports its decision to admit Dr. David's testimony, the superior court properly admitted it.

b. ER 403

McChesney argues Dr. David's testimony is inadmissible under ER 403 because it was not helpful and was likely to confuse the trier of fact. We disagree.

ER 403 provides relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." When Dr. David testified, she articulated the criteria for a CRPS diagnosis. She also confirmed Dr. Lohse's testimony that McChesney did not meet the diagnostic criteria for CRPS. So, Dr. David's testimony was relevant and not cumulative, prejudicial, confusing, misleading, or a waste of time.

Because Dr. David's testimony was relevant, and none of the reasons for excluding the testimony suggested by McChesney apply, the superior court properly admitted it.

c. Weight

McChesney argues the superior court should have given Dr. David's testimony "insubstantial weight." The Department argues the superior court correctly weighed Dr. David's testimony and this court should not reweigh the evidence on appeal. Because

we do "not reweigh or rebalance competing testimony and inferences,"[31] we agree and do not address this claim.

IV.    Attorney Fees on Appeal

McChesney requests an award of attorney fees on appeal under RAP 18.1 and RCW 51.52.130(1).   We may grant reasonable attorney fees on appeal when an applicable law allows.[32]  If we sustain a worker's right to relief on appeal, we may award the worker with reasonable attorney fees.[33]   Because we affirm the superior court's determination, we deny McChesney's request for attorney fees on appeal.

CONCLUSION

We affirm the superior court's decision affirming the BIIA's decision to reverse the IAJ and affirm the Department because substantial evidence supports the superior court, BIIA, and Department's findings that McChesney's industrial injury did not proximately cause CRPS, and he is not entitled to an increase in PPD.  Because substantial evidence supports the trial court's determination about Dr.  David as an expert and that her testimony was relevant, the superior court properly admitted her testimony.  We deny McChesney's request for attorney fees on appeal.

---

[31] City of Bellevue v. Raum, 171 Wn. App. 124, 155, 286 P.3d 695 (2012).
[32] RAP 18.1(a).
[33] RCW 51.52.130(1).

Affirmed.

_____ Leach, J.

WE CONCUR:

_____ _____ Appelwick, J.